City of South Miami v. State *ex rel.* George Couper Gibbs, Attorney General, Ruth E. Fritzsche, Dorothea Lassiter, Lillah C. Franklin, George Bennett Findley, *et ux.*, and J. D. Gautier, *et ux.*

197 So. 109
Division B
Opinion Filed June 21, 1940
Rehearing Denied July 12, 1940

*W. G. Ward* and *Stapp, Ward & Ward,* for Plaintiff in Error;

*Joseph Weintraub* and *Melbourne L. Martin,* for Defendants in Error.

PER CURIAM.—The City of South Miami, Florida, was created by Chapter 13425, Special Acts of 1927, Laws of Florida. Chapter 13425, *supra,* was amended by Chapter 16688, Special Acts of 1933, Laws of Florida, and the effect of the said amendment was to reduce the territory embraced within the city limits of the City of South Miami.

On March 13, 1939, the State of Florida, upon the relation of George Couper Gibbs, Attorney General, and several co-relators, filed in the Circuit Court of Dade County, Florida, an information in the nature of a quo warranto whereby they challenged the authority of the City of South Miami to exercise the powers and franchise of a municipal corporation over certain lands therein legally described and owned by each of the said co-relators.

The respondent City of South Miami filed a demurrer and motion to quash the writ of quo warranto based upon the aforesaid information and on the 1st day of June, 1939, the lower court made and entered an order overruling said demurrer and denied the motion to quash, but permitted or allowed the respondent thirty days in which to file its answer or return to the said writ and information.

On June 29, 1939, the respondent, City of South Miami, filed its answer and return to the information and writ of quo warranto. The answer and return consisted of several pages and set up as a defense, first, the doctrine of estoppel; and second, allegation of facts showing municipal benefits on the part of the respondent to each piece of property described in the information and writ of quo warranto.

The answer and return denied every feature of the lack of municipal benefits alleged in the information, and set forth that the property sought to be ousted was so located within the city limits as to come within the range of municipal benefits and that some of it had received municipal benefits; that the property involved is subdivision lands, with streets and blocks duly platted and the same could not be used as rural, farm or grove property. The area of the City of South Miami consists of approximately three square miles.

The facts appearing in the answer or return of the respondent are in response, it is contended, to that portion of the information alleging that the lands involved are rural, far removed from the conveniences and advantages of city life, and isolated from the municipality proper, being situated approximately from one to three miles from the city hall; that the town consists of a city hall and a few small buildings grouped in the center around the city hall; the lands of the co-relators are assessed greatly in excess of their real value and the moneys used to support the city government; that no sidewalks, roads, sewers or waterworks or other improvements appear around said lands and that no municipal benefits whatsoever accrue thereto; that no fire protection or police protection or garbage or light service are afforded the lands of the relators and only municipal benefits are given or bestowed upon the residents and property owners residing within a small area within the business center of said municipality.

It is asserted that the answer makes issues on the following points: (d) the municipality furnishes no police protection, (b) the municipality furnishes no fire protection; (c) there are no streets or roads leading to the lands involved except country roads; (d) the municipality does not maintain street lights upon the property; (e) the municipality

does not collect garbage from the land; (f) no municipal benefits accrue to said property described in the information. Respondent admits that some of the property is situated in the extreme northern portion of the city, while some is located in the extreme southwestern portion.

On the question of estoppel the answer sets forth a chain of title to the lands owned by the respective co-relators which shows that the greater portion of the property was acquired by foreclosure of tax certificates issued by the City of South Miami; but several of the tracts possessed titles not based on the tax lien foreclosure certificates. It is contended that these facts constitute estoppel which precludes the relator and co-relator from maintaining the suit at bar.

The relator and co-relator filed a demurrer to the answer and return of the respondent and likewise a motion to strike parts thereof, and simultaneously therewith filed a motion for a judgment of ouster, notwithstanding the answer, or return, on the grounds: (1) that the facts set up therein fail to show that the lands are necessary or useful for municipal purposes; (2) that facts alleged in the answer and return fail to show lawful authority exercised by the municipality over said lands; (3) the facts appearing in the answer do not constitute a defense; (4) the facts appearing in the answer and return are not responsive.

On August 14, 1939, the lower court heard argument on the demurrer, motion to strike and motion for final judgment of ouster and his order recited that an examination of the pleadings had been made and a map or plat attached to the information showing the location of the lands had been considered and that most of the lands involved in the suit at bar were contiguous to lands heretofore ousted from the respondent municipality and that a large portion of the lands are situated beyond other lands which have been ousted

from said municipality and said lands involved are further removed from the built-up portions of said municipality than are most of the lands which have been previously ousted by the court, and for these reasons the allegations of the answer as to estoppel and municipal benefits are legally insufficient. A final judgment of ouster was entered and an appeal therefrom has been perfected to this Court.

Section 8 of Article VIII of the Constitution of Florida gives the Legislature power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers and to alter and amend the same at any time. The constitutionality of Chapters 13425 and 16668, *supra,* are not called into question in this proceeding. Quo warranto proceedings in the name of the State of Florida upon the relation of the Attorney General, joined by property owners as co-relators, is the proper remedy to inquire into the usurpation of a public franchise by or through unlawful authority. See State *ex rel.* Davis v. City of Stuart, 97 Fla. 69, 120 So. 335.

It is contended that the return and answer of the respondent contain allegations of fact constituting municipal benefits to the land involved in this suit. We are inclined to the view that the allegations showing municipal benefits to the lands herein described are the conclusions of the pleader, because the brief of respondent admits that the land is situated in remote sections of the municipality; that the lands are unimproved; police and fire protection and garbage service are not necessary for vacant lots located on the northern and southern boundaries of the municipality. The contention that the lands involved are within the range of municipal benefits is certainly the conclusion of the pleader. We fail to find error in this assignment.

It is next contended that the relators are estopped from maintaining the suit at bar because the title to some of the

land involved is based on titles acquired by the foreclosure of tax certificates issued by the respondent. We have not been supplied with authorities sustaining this view. The purpose of the quo warranto proceedings here is to determine the franchise power of the respondent city to tax lands where no municipal benefits accrue thereto. The fact that the title to some of the land involved was acquired by the foreclosure of tax certificates is not relevant or material. The title to said property cannot be made an issue, but the question of municipal benefits is the paramount issue to be determined. The contention that the respondent under the Constitution is as a matter of law entitled to a jury trial is correct, and in this we are in accord, but before a jury trial can be had, an issue for determination must be presented and the answer and return fail to present such an issue.

The burden of showing error rests on the one asserting it. There is a presumption in law and equity of the correctness of the ruling of the trial court. We fail to find error in the record.

The judgment appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.