RAWLS, Judge.
Plaintiffs have appealed from two final judgments approving the valuation placed upon their land by the Tax Assessor of Bay County for the years 1967 and 1968, denying plaintiffs’ prayer that the land be reclassified as agricultural and entitled to reassessment at a lower value.
Plaintiffs are the owners of three parcels of land which have been identified for the purpose of convenience as Parcel A, Parcel B, and Parcel C. Parcel A consists of approximately 115 acres and is lo *885 cated partly in and partly outside the northern corporate limits of the City of Panama City. Parcel B, consisting of approximately 560 acres, and Parcel C, consisting of approximately 75 acres, are contiguous tracts located across the bay from and several miles west of Panama City. Neither of these parcels is within or near the corporate limits of any municipality although Parcel B is partially bisected by a public road with the land lying south of the road bordering on a lagoon.
The complaint alleged, among other things, that an “en masse” appraisal of all real property in Bay County by a private appraisal firm resulted in the subject parcels being assessed illegally, erroneously, and grossly in excess of just valuation in that the assessor denied to them an agricultural classification. The statute applicable to the 1967 taxes provides:
“All lands being used for agricultural purposes shall be assessed as agricultural lands upon an acreage basis, regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate development. Provided, agricultural purposes shall include only lands being used in bona fide farming, pasture, grove or forestry operations by the lessee or owner, or some person in their employ. Lands which have not been used for agricultural purposes prior to the effective date of this law shall be prima facie subject to assessment on the same basis as assessed for the previous year, and any demand for a reassessment of such lands for agricultural purposes shall be subject to the severest scrutiny of the county tax assessor to the end that the lands shall be classified properly. Provided, this subsection shall not be construed, interpreted, or applied so as to permit lands being used for agricultural purposes to be assessed other than as agricultural lands and upon an acreage basis.” [1]
The 1968 taxes are controlled by Section 193.201, Florida Statutes 1967, F.S.A., which requires the County Agricultural Zoning Board to annually zone the property in the county agricultural or non-agricultural. Subsection (3) provides: “All lands which are used primarily for bona fide agricultural purposes shall be zoned agricultural.” Subsection (5) provides “ * * * ‘agricultural lands’ shall include horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee, pisciculture where the land is principally for the production of tropical fish and all forms of farm products and farm production.”
The issue before the trial court presented for decision a determination of whether on the first day of the taxable years in question the lands owned by plaintiffs were being used in a bona fide forestry operation.
Parcel A was purchased by plaintiffs in 1925 while Parcels B and C were acquired in 1944. All parcels were used in timber and turpentine operations prior to purchase. The parcels were being held with several thousands of acres of land devoted to timber operations. The sole use of the property by plaintiff was the cutting of timber, “just holding it” and keeping fire off as much as possible. No improvements were placed on the property. Fire lanes had been cut on Parcel A at one time, but none on Parcels B and C. After the initial purchase and cutting in 1944, timber was cut again in 1956 on Parcels B and C. Parcel A was cut twice, once around 1930 and the second time about 1963.
The undisputed evidence is that Parcel A was assessed as residential, business and commercial, and Parcels B and C as residential, commercial and industrial. It is further undisputed that in 1967 the property had not been platted and that the property adjacent to these Parcels was not urban though there was shown to be some improvements in the vicinity, such as, a *886 cemetery, a junk yard, a camping ground, and a few homes. The evidence further reflected that in 1969, at the time of the trial, development in the vicinity of these parcels was still sparce. The tax assessor’s only witness testified at the 1969 trial that the “present use” of the property was “woodlands” but he considered its location and conversion possibilities and the “conversion factors will outweigh its use as forestry lands”. He stated that the location determined whether it is “agricultural lands as opposed to woodlands that has conversion possibilities for other uses” and that he was considering the potential uses “within the next 5 years.”
This Court has condemned this type of assessment based upon potential uses which could not be realized in the immediate future.[2]
Much of appellants’ brief is devoted to a discussion containing citations of authority relative to the method of evaluating property based upon the highest and best use to which it is presently adapted, or the use to which it can reasonably be expected to be put in the immediate future. While these are certainly valid factors to be considered in evaluating property for tax assessment purposes as provided by Section 193.021, such factors are irrelevant in determining whether the land is being used in a bona fide agricultural operation entitling it to an agricultural classification. This latter determination is one of fact based upon the peculiar circumstances present in each case. There is no issue before the Court in the case sub judice regarding the value which should be placed upon appellants’ land for tax assessment purposes. The parties stipulated that if the land is entitled to an agricultural classification, the value should be an agreed amount per acre, but if the agricultural classification is not warranted, then the valuation as presently fixed by the tax assessor is proper and should be approved. So it is that the overriding issue in this case is one of classification and not of valuation.
It is our construction of the taxing statutes that the legislature intended for taxing officials to classify real property as agricultural lands entitled to an evaluation for assessment purposes based upon its agricultural use and not upon other uses to which the land might be reasonably adapted.[3] Lands used for agricultural purposes are defined by statute to include lands being used for bona fide forestry operations.
The decisive issue in this cause, of course, is what constitutes a bona fide forestry operation. Is proof required that the landowner must embark upon a program of land preparation, planting of trees, and cultivation of same as is requisite in “row crop” farming? We think not. To so hold would ignore the history of forestry operations in this country from the time our fathers and forefathers began setting aside plots of land to hold for the purpose of periodically harvesting lumber, pulpwood or naval stores. A bona fide forestry operation is not synonymous with tree farming. The Florida Tax Assessors’ Guide in Section 3.7 defines “woodland” as:
“Land which is stocked with trees of commercial or non-commercial species and is (1) producing or physically capable of producing usable crops of wood, (2) economically accessible now or in the future, and (3) not withdrawn from wood products utilization for use as parks, orchards, pastures, or for other purposes.”
The uncontroverted testimony in this record discloses that the landowner, during the long term of years that he owned the subject parcels, cut the merchantable timber and relied upon natural reseeding for restocking, which program resulted in a competent stand of timber. As to one parcel a witness for the tax assessor was asked if he had found any of the land being used *887 in a forestry operation. The witness answered :
“I found no evidence * * * at least from my inspection of it. They have trees out there, pine trees. At that time it was about 80% pine trees. I saw no evidence of it being a part of the * * forest land.”
Obviously, this witness was unable to see the forest because of the trees.
The “coconut grove case”[4] is a landmark opinion on the subject being considered. There, 67.89 acres of land was admittedly worth $2,359,600.00. The landowner contended that the agricultural value was $54,312.00 for tax purposes. The Third District Court in agreeing with the landowner, stated:
“ * * * It is readily apparent that this land is not being put to its best use, nor is it even being put to its best agricultural use * * *
* * * * * *
“The appellee has striven mightily to-construe the word bona fide, as used in the statute, to mean something more than good faith. We cannot place a broader definition on this word than ‘in good faith’.” (Emphasis supplied.)
By its brief appellee argues typical wild lands in Florida grow a multitude of varieties of trees, shrubs, and other vegetation, for which there is some market, and then asks the questions: Does permitting such growth constitute the art or science of agriculture as was intended by the legislature when it wrote into the Florida Statutes the provision that lands, primarily used for bona fide agricultural purposes including forestry operations, would qualify for special tax treatment? Does this mean that our legislature intended special or privileged tax treatment to be granted such lands when application therefor was filed by the owner ?
It is not for us to decide whether a particular taxpayer receives preferential treatment. That decision was made by the legislature and reaffirmed by the people of Florida in 1968 upon the adoption of Section 4, Article VII, Constitution of the State of Florida, F.S.A.
The decisive question here is whether a landowner must plant, fire lane, and otherwise cultivate timberland before he can engage in a bona fide forestry operation under Section 193.11(3). If that had been the legislative intent it could very easily have included such requirements in the statute. It would be an anomaly to hold that a natural stand of timberland, which has in the past been used for nothing but timber cutting and turpentine, does not constitute a bona fide forestry operation. Tyson v. Lanier,[5] contributed to the question being considered. There the Supreme Court stated:
“The foregoing and other provisions of § 193.11(3), Florida Statutes, F.S.A., conclusively show that the legislature was attempting to classify lands used for agricultural purposes and to require that they be assessed on an acreage basis, regardless of where they were located.
* * * * * *
“The lower court also fell into error in holding that ‘full cash value’ had reference to value for any and all potential uses. This interpretation ignored the legislative classification of agricultural lands for tax purposes on the basis of actual use which the legislature was authorized to make.”
The record in this cause reflects without contradiction that the subject lands were purchased many years ago by a landowner who was involved in large acreage devot to forestry purposes. The basic evidence adduced by the tax assessor going to the bona fides of the classification of the subject land was of a negative character, i. e., that its highest and best use was not *888 that of .forestry and the land was not being' put to its best agricultural use. The manifest weight of the evidence is that the land was devoted to the production of timber and although like the coconut grove in Matheson, supra, the best economical forestry practices were not being exerted by the landowner, it was as of the taxable date entitled to an agricultural classification.
On the basis of this record considering the stipulation, the lack of urbanizatic of surrounding area, the testimony as to sole use and the present use, we find that the trial judge erred in not classifying the property as agricultural and that failure to fire lane or otherwise cultivate woodlands does not preclude such lands from constituting a bona fide forestry operation.
Reversed.
JOHNSON, C. J., concurs.
WIGGINTON, J., dissents.

. Section 193.11(3), Florida Statutes 1965, F.S.A.

. Williams v. Simpson, 209 So.2d 262 (Fla.App.1st 1968).

. Lanier v. Overstreet, 175 So.2d 521 (Fla.1965).

. Matheson v. Elcook, 173 So.2d 164 (Fla.App.3d 1965).

. Tyson v. Lanier, 156 So.2d 833 (Fla.1963).