CARROLL, DONALD K., Acting Chief Judge.
The plaintiff in an action for declaratory and injunctive relief has appealed from an adverse final judgment entered by the Circuit Court for St. Johns County, holding that certain lands owned by the plaintiff were taxable as nonagricultural lands.
As phrased by the appellant, the sole question presented for our determination in this appeal is whether the denial of agricultural zoning for a part of a single tract of the plaintiff’s lands by the County Agricultural Board of St. Johns . County was arbitrary and contrary to the standards set in Section 193.461, Florida Statutes, F.S.A. A more precise statement of this question, as suggested by the defendants, is whether a 500-acre parcel owned by the plaintiff in the said county was used in a bona fide agricultural operation on January 1, 1968, and on January 1, 1969, as contemplated by the said statute.
The record establishes the following facts pertinent to the present consideration:
The plaintiff is the owner and operator of a paper mill in Port St. Joe, Florida, and owns extensive land holdings in Florida and Georgia, perhaps totalling as much as a million acres. These lands are devoted primarily, if not wholly, to forestry and timber operations.
Among the lands owned for at least a quarter century is a 4,300-acre tract in the northwest section of St. John County, known as the “Hallowes Tract,” lying south of Switzerland, Florida, and north of Orangedale, bound on the west by the east bank of the St. Johns River. The eastern property line is several miles to the east from the river and located in a swampy, uninhabited area.
The entire Hallowes Tract had been classified as agricultural lands and taxed as such for up to and including 1967. State Road 13, which generally runs in a north-south direction passes through the tract. That part of the tract lying east of the said road contains about 3,800 acres, and that part lying west of the road and along the St. Johns River contains approximately 500 acres — this latter is the part directly involved in the present appeal.
*416 The first critical question before us is whether the plaintiff was using the land in question in a bona fide forestry operation on January first of each of the taxable years 1968 and 1969. The plaintiff’s tax return states that the land was “being used primarily for agricultural purposes and in connection with a bona fide agricultural operation.”
The only testimony adduced by the plaintiff in an effort to prove a bona fide forestry operation was as follows:
A real estate appraiser, who was employed by the plaintiff to testify as to whether the said land was rural or urban, testified that it was “typical forest, managed forest lands,” but he admitted that this statement was based simply on what he had been told and that he had “made no studies or investigations as to whether they were managed or not * * * I made no cruise of this land, made no study.”
A registered forester testified for the plaintiff that it would be commercially feasible to cut the timber on the said land but did not think that it would be feasible or economically sound to plant trees on it. He also testified that, during his inspection of the land, he did not notice that there had been any cutting of hardwood during the last ten years and that he personally had cut no timber off the land; that he knew of no one in the business who had done so; and that he had not talked to anyone who did any management of the land and he did not observe any.
An industrial forester for another paper company testified on behalf of the plaintiff that he found the said land to be suitable for forestry operations and that it would be commercially feasible to cut the stand of timber now on the land. He further testified, however, that “I don’t think planting would be an indicated forestry operation again” and that he did not observe any evidence at all of management of the land.
On the other hand, the defendants adduced the following testimony on the issue of whether the plaintiff was carrying on a bona fide forestry operation on the said land on the dates in question:
One of the defendants, the county agricultural agent and a member of the steering committee of the said agricultural zoning board, testified that in his opinion agricultural zoning was denied because of lack of fire breaks on the land and because the land obstructed the growth of urban areas.
Another defense witness, who had been a county commissioner in 1968, testified that agricultural zoning was denied because the land impeded the development of three towns, because the land was not feasible for use as a forestry operation, and because :
“ * * * there was no sign in this particular area of timber management. I did not find any fire lines and I have driven on several roads and I certainly did not find any sign of where there had been any management of a nature that I have always considered management over my own tract as being needed.”
A witness who had been the plaintiff’s chief forester since June, 1968, testified that the land was suitable as timberland and the timber on it commercially feasible to cut. While he denied that good forestry practice requires the cutting of fire lines along the roads, he acknowledged that no roads were cut on the said land and that the plaintiff used no professional forester or “equipment, fire fighting, cats, bulldozers” in connection with the land. He also testified that, while the plaintiff had a land management program, it had not “shifted here” to St. Johns County. He admitted that it had become commercially feasible to cut the timber about ten years before and pulpwood in the last five years, yet the company records do not show such cutting, and he had observed no stumpage on the land. He finally testified that it was one of his duties to recommend to the plaintiff the purchase of lands for forestry operations but that he would not have recommended to the plaintiff the purchase of *417 the said land for timberland and forestry purposes.
The foregoing testimony, while in some conflict as to the pivotal issue of whether the plaintiff was conducting a bona fide forestry operation on the said land on January 1, 1968, and 1969, was in our opinion, amply sufficient to support the finding of the chancellor, who was sitting as the trier of the facts, that the said land was not being used for a bona fide agricultural purpose on the said dates. This appellate court lacks the authority to substitute its judgment for that of the chancellor as to questions of fact where, as here, the evidence in the record reasonably supports the chancellor’s findings of fact.
Section 193.461, Florida Statutes, F.S.A., which is referred to in the above point on appeal, provides that there shall be in each county an agricultural zoning board, composed of the board of county commissioners as voting members and the county tax assessor and the county agent as ex officio non-voting members. That section further provides, in pertinent part, concerning the duties of the county agricultural zoning board:
“(2) The county agricultural zoning board, in order to promote and assist a more orderly growth and expansion of urban and metropolitan areas, shall on an annual basis zone all lands within the county as either agricultural or nonagri-cultural.
“(3) No lands shall be zoned as agricultural lands unless a return is made as required by law which shall state that said lands on January 1st of that year were used primarily for agricultural purposes, and the board, before so zoning said lands, may require the taxpayer or his representative to furnish the board such information as may reasonably be required to establish that said lands were actually used for a bona fide agricultural purpose. All lands which are used primarily for bona fide agricultural purposes shall be zoned agricultural. The maintenance of a dwelling on part of the lands used for agricultural purposes shall not affect the right to have such lands zoned as agricultural lands.
“(4) (a) When property which is zoned as agricultural is diverted to another use or ceases to be used for agricultural purposes, the board shall reclassify such property as nonagricultural.
“(b) The board may also reclassify lands zoned as agricultural as nonagri-cultural when there is contiguous urban or metropolitan development on two or more sides and when the board finds that the continued use of such lands for agricultural purposes will act as a deterrent to the timely and orderly expansion of the community.
“(5) For the purpose of this section, ‘agricultural lands’ shall include horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee, pisciculture where the land is used principally for the production of tropical fish and all forms of farm products and farm production.”
In accordance with these statutory provisions, the defendants who were members of the County Agricultural Zoning Board of St. Johns County determined that the plaintiff’s said land was nonagricultural on each of the dates in question, and the Circuit Court held in the final judgment appealed from that such determination “was not arbitrary, unreasonable or capricious.”
In this situation the following rule of Florida is correctly summarized in 1 Fla. Juris., Administrative Law, Sec. 189, pp. 423 and 424:
“The matter of what constitutes an arbitrary or unreasonable exercise of power by an administrative agency or an abuse of discretion must be determined by the facts in a particular case and the scope and extent of the powers of a particular agency and the situation which calls for the exercise of such powers.
*418 The courts recognize that an administrative agency acting within the authority conferred upon it must be accorded a wide discretion in the exercise of its power, and affirmative and clear proof is necessary to show that an action is arbitrary, unreasonable, or an abuse of discretion.”
In two recent decisions this court and the Florida Supreme Court have passed upon situations analogous to that presented in the case at bar.
In Jeffreys v. Simpson, 222 So.2d 224 (Fla.App.1969), we found that the owner of certain land, after purchasing it in 1948, “ * * * constructed fire lines, protected the timber against fire and theft, and carried on what was considered to be good forestry practices as recommended by professional foresters. * * * ” These practices were used to protect the young stand of pine timber and a quantity of hardwoods growing on the lands. In 1956 an improvement cut was made “in order to remove undesirable growth and permit better growing conditions for the remainder” and in 1965 all merchantable timber was cut, leaving the land in a bare cutover state. No replanting was done, but the landowner contended that he was permitting his land to lie fallow for two years “in accordance with professionally recommended practices” in order to restore the soil to a desirable condition before replanting pine seedlings in 1968, which replanting was contracted for in late 1967. Nevertheless, the Circuit Court held that the plaintiff was not using his land in a “bona fide forestry operation during the years 1966 and 1967,” and on the appeal we affirmed that holding. In so affirming we said:
“The trial judge, in the exercise of a discretion vested in him by law, adopted the latter view expressed above and found that plaintiff was not using his land in a bona fide forestry operation during the years 1966 and 1967. The judgment here questioned, based as it is upon the trial judge’s evaluation of conflicting evidence and his determination of the credibility of the witnesses, is clothed with a presumption of correctness and may not be disturbed on appeal except by a clear showing that it is unsupported by competent and substantial evidence or otherwise constitutes an abuse of discretion. Appellant having failed to make error clearly appear, the judgment appealed is affirmed.”
Similarly, in Walden v. Borden Company, 235 So.2d 300 (Fla.1970), a parcel of land was being used by the lessee of the owner as a pasture for grazing cattle in connection with a bona fide livestock operation, an agricultural purpose entitling the land to an agricultural classification. The Supreme Court of Florida held that, since the parcel was a part of a larger tract owned by the landowner which was being used in connection with its phosphate operations, such was its primary use, and the use of the smaller parcel for cattle grazing was only incidental. The Supreme Court held:
“We have concluded that the legislative classification of agricultural lands for tax purposes was intended to benefit the owner whose lands are dedicated to the named agricultural purposes ‘exclusively’ so used under old Section 193.201 and ‘primarily’ so used under new Section 193.461 whether such use is being made directly by the owner himself or indirectly through an agent or lessee; * * * ”
For the foregoing reasons the final judgment appealed from herein must be, and it is
Affirmed.
WIGGINTON, J., concurs.
SPECTOR, J., dissents.