RAWLS, Judge.
The plaintiffs have appealed from a judgment finding that certain lands designated as Parcels 3, 4, 5 and 6 are not agricultural lands for tax purposes except for 259 acres of planted pine. We are again confronted with the question of what criteria should be used by a county taxing official in determining what constitutes a bona fide forestry operation entitling the land to an agricultural classification for tax assessment purposes.
B. H. Oates, individually and as trustee for Wells-Oates Lumber Company, and others, brought these two actions contesting the tax assessments for the years 1966 and 1967 on certain lands. This appeal involves *731 only the four parcels designated in the lower court as the Lehigh Tract and containing approximately 3,300 acres of woodland in Volusia County. By stipulation the parties agreed that the issue before the lower court was whether or not the property is entitled to an agricultural classification as forestry lands within the meaning of Section 193.11(3), Florida Statutes, F. S.A., and, if so, the proper assessed valuation.
Oates, who had been in the forestry business for SO years, entered into a contract to purchase the four parcels from Lehigh Portland Cement Company on December 17, 1965, for $302.68 per acre. For some years prior to that time the property had been under the management of Bunnell Timber Company whose forestry operations on the acreage in question consisted solely of planting approximately 259 acres in slash pine and limited cutting on other portions. The contract to purchase permitted the seller to continue this arrangement with Bunnell provided the harvesting met with good forestry practices. The purchase of the Lehigh Tract was completed in June 1966 for the purpose of forestry operations. Approximately 90% of the total tract is forest lands and the remainder is swamp. The topography is varied and contains sand pine, slash pine, hardwoods, scrub oaks, and palms. The pines are approaching the age for the harvesting of commercial pulpwood. Under the forestry practices used by Oates, if it is still growing, cutting should be delayed until it is saw-log size, that is, 25 to 40 years old. Oates denied that there was considerable unmerchantable species of trees on the property. He admitted that among the more valuable trees there were palms, turkey oaks, scrub oaks, and water oaks that had no timber value, but he contended that they had commercial value and even if not now merchantable, he believed they would be in the foreseeable future. He and his witnesses testified that it was not economically feasible to cut unwanted vegetation prior to harvesting because in doing so it would do more damage to the timber trees than it would do good. Seed trees had been left during the cuttings made prior to the 1966 purchase.
Since their purchase the plaintiffs have posted the land and have spent $1,200.00 improving the old woods roads which serve not only for ingress and egress but also for fire protection purposes. In 1966 they had an engineering study made of a serious drainage problem connected with an old drainage ditch across the property which the plaintiffs presumed was originally constructed by Flagler County, but they have been unsuccessful in their efforts in getting either Flagler or Volusia County to pay any part of the cost of correcting the problem.
After he received his 1966 tax bill, Oates listed the property with a real estate broker. It was not listed at a set price but Oates desired to sell it at a profit. At some unspecified time after the 1966 purchase Oates granted an option to purchase 325 acres for development which option was never exercised.
The evidence relied upon by the tax assessor is that although the plaintiffs have improved the old woods roads through the property and have posted it, they have not done any clearing, thinning, removal of unwanted growth, cultivation, controlled burning, installed a caretaker, and have not spent the $12,000.00 needed for drainage improvements to prevent flooding so the property is not entitled to an agricultural assessment as a bona fide forestry operation except the acreage in planted pines.
Thus, the evidence shows that although some attempt has been made to sell the property some months after the January 1, 1966, assessment, those efforts have been unsuccessful. The evidence further shows *732 that the sole use to which the property has been put for some time was the cutting of hardwood and pine, that the only difference in the trees is that some were planted by man while others were planted by nature from seed trees deliberately left by man during harvesting operations, but that all trees, however planted, received the exact same forestry management which does not include thinning, clearing, cultivation, etc.
Although the trial judge found that the land had a “marginal suitability” for forestry use, he held that “capability” of the land for forestry use is not. a factor to be considered in determining “actual bona fide use”; that the cultivation, planting, thinning and drainage are the controlling factors, so the planted pines should be assessed as agricultural lands but not the forestry lands planted by nature.[1]
On the basis of our recent decision in Sapp v. Conrad,[2] we reverse and remand with directions that the tax assessor reassess for the years 1966 and 1967 the total acreage in question as agricultural lands.
Since the subject of classification of agricultural lands for taxation is not restricted to any geographical area of the State but is of importance to the assessing authorities and the landowners of this State, this cause is certified as one of great public interest pursuant to Article V, Section 4(2), Constitution of the State of Florida, F.S.A.
Reversed.
JOHNSON, C. J., and SPECTOR, J., concur.

. Cf. Matheson v. Elcook, 173 So.2d 164 (Fla.App.3d 1965), wherein that Court stated: “It is readily apparent that this land is not being put to its best use, nor is it even being put to its best agricultural use.”

. Sapp v. Conrad, Fla.App., 240 So.2d 884, filed Nov. 17, 1970.