251 So.2d 665 (1971)
Warren L. GREENWOOD, As Tax Assessor of Volusia County, Florida, et al., Petitioners,
v.
B.H. OATES, Individually and As Trustee, Etc., et al., Respondents. (two cases)
Nos. 40597, 40598.
Supreme Court of Florida.
July 12, 1971.
*666 William W. Barr, of Raymond, Wilson, Karl, Conway & Barr, Daytona Beach, for petitioners Warren L. Greenwood, as Tax Assessor and Dorothy M. Mills, as Tax Collector, etc.
Charles W. Luther, Daytona Beach, for petitioner Fred O. Dickinson, Jr., as Comptroller, etc.
E. Clay Parker, of Hoffman, Hendry & Parker, Daytona Beach, for respondents.
DEKLE, Justice.
The District Court of Appeal, First District, has certified to us that its decision in Oates v. Bailey (Greenwood here is successor Tax Assessor), 241 So.2d 730 (Fla.App. 1st, 1970), passes upon a question of great public interest. We accepted jurisdiction pursuant to Fla. Const. Art. V, § 4, F.S.A.
Although the district court did not certify a particular question, we assume that it is the same as the questions contained in two similar cases which were also certified to this Court: St. Joe Paper Co. v. Mickler, 241 So.2d 415 (Fla.App.1st, 1970), and Sapp v. Conrad, 240 So.2d 884 (Fla.App.1st, 1970), the same being:
"Precisely what criteria should be considered by a county taxing official in determining what constitutes a bona fide forestry operation entitling the land to an agricultural classification for tax assessment purposes?" (which would result in a lower tax)
The statutes in question are: Fla. Stat. § 193.071 (1969), F.S.A. [formerly § 193.11 (1967)], and § 193.461 (1969) [formerly § 193.201 (1967)] (popularly referred to as *667 the "Green Belt" law, which would seem to encourage and aid agricultural use of lands in an engulfing urban world).
Section 193.071(3) provides, inter alia, as follows:
"(3) All lands being used for agricultural purposes shall be assessed as agricultural lands upon an acreage basis, regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate development. Provided, agricultural purposes shall include only lands being used in a bona fide farming, pasture, grove or forestry operation by the lessee or owner, or some person in their employ." (Emphasis supplied)
Sections 193.461(3) and 193.461(5) provide, inter alia, as follows:
"(3) * * * All lands which are used primarily for bona fide agricultural purposes shall be zoned agricultural.
"(5) For the purpose of this section, `agricultural lands' shall include horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee, pisciculture where the land is used principally for the production of tropical fish and all forms of farm products and farm production."
Accordingly, we must initially consider the construction to be placed on the words "bona fide" and "operations," and then as each relates to the other concerning "forestry."
The concept of "bona fide" includes "in good faith", "genuine", "without fraud or deceit". See Webster's Third New International Dictionary.
The concept of "operations" has its genesis in the meaning: "being at work", "producing an effect", "acting", "bringing about", "performing", "functioning", and "activity". See Webster's, supra.
The existence of a "bona fide forestry operation" therefore is not to be tested merely by the subjective expressed intention of the operator, but it is to be ascertained objectively on the basis of all available characteristics applicable to the inquiry, including not only the expressed intention of the operator but also the actual use, if any, of the land in question. Of necessity, therefore, these inquiries will present and raise questions of fact, the ultimate conclusion from which is to be drawn by the trier of fact, in this instance the Chancellor. Of course, instances may arise where the facts are so clearly established that the conclusion becomes one of law.
Conceivably, a claim for agricultural assessment under assertion of a bona fide forestry operation could be "bona fide" within the meaning set forth above, yet not meet any standards sufficient to qualify it as an "operation". To illustrate, it would be possible for a property owner to seek an agricultural assessment in good faith on a thousand acre tract of land devoted to no specific commercial use, but which had only a combined total of 50 acres of merchantable timber. Clearly, the owner in such a case could not be said to be conducting a thousand acre forestry operation, although he may have been acting with perfectly good faith.
However, once a "forestry operation" has been established we expect that it would be a rare situation where the claim for agricultural assessment would not be "bona fide". For example, it is foreseeable that a party, acting in good faith, could invest in unimproved land, knowing its potential as a merchantable timber operation, utilize it as such, and yet anticipate increases in land values as well as deductions afforded on income tax schedules through depreciation and expenditures. The concern of the property owner with these incidental objectives would not disqualify his land for consideration as a bona fide forestry operation.
It is clear therefore that any determination of a bona fide forestry operation *668 must be arrived at upon consideration of all practices and indicia existing in each case, and on a case by case basis. It would be an impossible and unwise task for this Court, or any appellate court, to attempt to establish inflexible, definite criteria to be arbitrarily applied on a state-wide or even area basis.
We can foresee that when a landowner has filed an application for agricultural classification, accompanied by the appropriate affidavit, the taxing officials and then later the Chancellor may take into consideration all factors contributing towards determining whether the forestry "operation" is "bona fide", including, but by no means limited to, the following:
(1) the opinions of forestry or other appropriate experts;
(2) the Tax Assessor's applicable expert opinion and factual data;
(3) the affidavit and testimony of the landowner and his witnesses;
(4) the business or occupation of the landowner;
(5) the nature of the terrain;
(6) the density of the marketable timber (or other product) on the land;
(7) the past usage of the land;
(8) the economic merchantability of the agricultural product;
(9) reasonably attainable economic salability thereof within a reasonable future time for the particular product (Trees do not mature and become so rapidly salable as do chickens or cows.); and
(10) the use or not of recognized care, cultivation, harvesting and like practices applicable to the product involved, and any implemented plans therefor.
As the district court pointed out in Sapp v. Conrad, supra, the statute does not require that the land be put to its best or highest economic use, or even to its best forestry use, and we agree that this is not the test. The statute even "prohibits" such a consideration in the fixing of the amount of assessment, after a favorable zoning to agricultural use is attained, by expressly providing that "no factors other than those relative to such use" shall be considered. (Emphasis added) This is in revealing contrast to Fla. Stat. § 193.011 which provides as the No. 2 factor of those listed for consideration in determining "just valuation" generally, "(2) The highest and best use to which the property can be expected to be put in the immediate future."
We are here dealing with an exception ("Green Belt") to the general assessment laws and must treat it in this exceptional way. There is nothing in the statute to require a landowner to be a good businessman or to make a profit, nor should a bona fide forestry operation be denied an agricultural classification merely because the land would be worth more in some other capacity. These negative factors are not controlling on the "good faith" or "genuineness" of the landowner in applying for an agricultural classification.
Perhaps the agricultural classification of the statute subconsciously continues in a sense the parallel of the basic right of the constitutional exemption ratio for homestead in Florida (Fla. Const. Art. X, § 4) which provides one-half acre in the city but 160 acres in unincorporated (undeveloped) acres, "which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality." Whether land is in or out of incorporated areas of course has no bearing on the determination of "agricultural use" within the intendment of the "Green Belt" law, as its express provisions clearly indicate. This continuing differentiation, however, carried forward to some degree from the basic distinction recognized in our constitution, does seem to continue the rationale of distinguishing agricultural use.
*669 In the present case there were, to be sure, some facts favorable to the landowner but the following facts before the Chancellor, generously supported his finding of no bona fide forestry operation here:
(1) The tract contains large stands of unmerchantable timber;
(2) very few improvements have been made on the land since it was purchased, and these improvements were not made for forestry purposes;
(3) the tract is highly variet in not only the elevation and character but also the types of vegetation growing on it;
(4) there have been no forestry management operations since the purchase;
(5) the landowner's expert witnesses based their opinions on information supplied by the landowner rather than upon information they gathered themselves;
(6) the landowner's creditability was effectively impeached when it was discovered that he had not hired a caretaker for the land as he had previously testified.
Upon impeachment of the landowner's credibility, the Chancellor also considered the following:
(A) the purchase price of the newly acquired property was $302.68 per acre contrasted to an assessed value of $56. per acre for property classified as agricultural;
(B) since purchasing the property, the owners have held the property out for sale and have listed it with at least one real estate broker, specifying that they would be willing to sell it at a profit;
(C) plaintiff sold an option (never exercised) at $550. per acre for 325 acres in the westerly part of the 3300-acre tract.
At this juncture it is appropriate to comment on the role of the District Courts of Appeal in reviewing a judicial determination that a bona fide forestry operation does or does not exist. It is a well-established rule in Florida that a judgment, order, decree, or ruling of a trial court comes to the appellate court with a presumption of correctness. Atlantic Coast Line R. Co. v. Baynard, 112 Fla. 544, 151 So. 5 (1933); City of South Miami v. State ex rel. Gibbs, 143 Fla. 524, 197 So. 109 (1940); Loos v. Scarfone, 46 So.2d 395 (Fla. 1950); Snider v. Bancroft Inv. Corp., 61 So.2d 184 (Fla. 1952); Florida Power and Light Company v. Ahearn, 118 So.2d 21 (Fla. 1960); Cohen v. Mohawk, Inc., 137 So.2d 222 (Fla. 1962).
Moreover, because the considerations involved in these cases are primarily questions of fact, the role of the District Courts should, in general, be limited to a consideration of the sufficiency of the evidence. Clearly, it is not the function of an appellate court to substitute its judgment for that of the trier of fact, be it a jury or a trial judge. Accordingly, although an appellate court might have reached a different conclusion had it been the initial arbitrator of the factual issues, if a review of the record reflects competent, substantial evidence supporting the findings of the chancellor, the judgment should be affirmed. Glass v. Parrish, 51 So.2d 717 (Fla. 1951); Trobaugh v. Trobaugh, 81 So.2d 629 (Fla. 1955); and Old Equity Life Insurance Co. v. Levenson, 177 So.2d 50 (Fla.App.3d, 1965).
We have carefully reviewed the record and decision of the District Court in the present case, and we conclude that the District Court substituted its judgment for that of the Chancellor, whose judgment was supported by competent, substantial evidence. Therefore, the decision of the District Court is quashed and the cause is remanded with directions to reinstate the judgment of the trial court.
It is so ordered.
CARLTON, Acting C.J., and ADKINS, BOYD and McCAIN, JJ., concur.