252 So.2d 225 (1971)
Gerald CONRAD, As Tax Assessor of Bay County, Florida, et al., Petitioners,
v.
J.M. SAPP et al., Respondents.
No. 40542.
Supreme Court of Florida.
July 14, 1971.
Rehearing Denied September 27, 1971.
*226 James C. Truett, of Truett & Watkins, Tallahassee, and Davenport, Johnston & Harris, Panama City, for petitioners.
Larry G. Smith, of Isler, Welch, Bryant, Smith, Higby & Brown, Panama City, for respondents.
John E. Norris, of Brannon, Brown, Norris, Vocelle & Haley, Lake City, for Forestry Assn. Inc., amicus curiae.
James E. Joanos, of Joanos, Parsons & Hayes, Tallahassee, in behalf of several taxpayers of Bay County, amicus curiae.
DEKLE, Justice.
The First District Court of Appeal having certified that its decision in the case of Sapp v. Conrad, 240 So.2d 884 (1st DCA Fla. 1970), passes upon a question of great public interest, we accepted jurisdiction pursuant to Fla. Const. art. V, § 4, F.S.A. The precise question certified is the same as is set forth in our opinion in Greenwood v. Oates, 251 So.2d 665 (Fla. 1971), regarding applicable criteria for determining "a bona fide forestry operation entitling the land to an agricultural classification (lower tax) for tax assessment purposes."
This case arose when the Petitioner-Tax Assessor refused to assess certain of respondents' land as agricultural. Respondents contended that they were engaged in a bona fide forestry operation entitling them to the lower tax under agricultural use within the provisions of Fla. Stat. §§ 193.11 (1965); 193.201 (1967), F.S.A. The circuit court disagreed, but the district court reversed, finding with the landowner. Respondents are the owners of three parcels of land which have been identified for the purpose of convenience as Parcel A, Parcel B and Parcel C. Parcel A consists of approximately 115 acres and is located partly in and partly outside the northern corporate limits of the City of Panama City. Parcel B, consisting of approximately 560 acres, and Parcel C, consisting of approximately 75 acres, are contiguous tracts located across the bay from and several miles west of Panama City.
The issue before the trial court was whether on the first day of the taxable years in question the lands owned by respondents were being used in a bona fide forestry operation under Fla. Stat. §§ 193.11 (1965); 193.201 (1967) [now § 193.461], F.S.A.
Parcel A was purchased by respondents in 1925 while Parcels B and C were acquired *227 in 1944. All parcels were used in timber and turpentine operations prior to purchase. The parcels were being held with several thousand acres of land devoted to timber operations. The sole use of the property by respondents was the cutting of timber, "just holding it and taking care of the timber, keeping the fire off as much as I could." No improvements were placed on the property. Fire lanes had been cut on Parcel A at one time, but none on Parcels B and C. After the initial purchase and cutting in 1944, timber was cut again in 1956 on Parcels B and C. Parcel A was twice cut, once around 1930 and the second time about 1963.
In its opinion the DCA held:
"It is my construction of the taxing statutes that the legislature intended for taxing officials to classify real property as agricultural lands entitled to an evaluation for assessment purposes based on its agricultural use and not upon other uses to which the land might be reasonably adapted. Lands used for agricultural purposes are defined by statute to include lands being used for bona fide forestry operations.
"The decisive issue in this cause, of course, is what constitutes a bona fide forestry operation. Is proof required that the landowner must embark upon a program of land preparation, planting of trees and cultivation of same as is requisite in `row crop' farming? We think not. To so hold would ignore the history of forestry operations in this country from the time our fathers and forefathers began setting aside plots of land to hold for the purpose of periodically harvesting timber, pulp wood or naval stores. A bona fide forestry operation is not synonymous with tree farming."
Whether a particular tract of land is to be classified as agricultural for tax assessment purposes is a question of fact to be determined upon the evidence and the particular circumstances present in each case. There is uncontradicted testimony in this case which shows that the landowner, over a period of years, cut the merchantable timber and relied upon a natural reseeding for restocking the tract which resulted in a competent stand of marketable timber. There is no doubt from this record that respondents owned large tracts of marketable timber which were devoted to forestry purposes, entitling them to the agricultural classification.
The Tax Assessor's fallacy here was in basing his denial of agricultural use principally "on its location" (near developing areas) and "conversion possibilities for other use" in the future; that the "conversion factors will outweigh its use as forestry lands." This is not the test or even a test or criterion to be considered in determining use as agricultural (forestry) lands (unless Subsection 4(b) of § 193.461, Fla. Stat., F.S.A., applies.[1])
Our decision in the case of Greenwood v. Oates, 251 So.2d 665 (Fla. 1971), sets forth more completely some of the factors to be considered in determining whether a parcel of land is entitled to an agricultural classification for tax assessment purposes. There we further answer the same certified question. On the basis of the opinion in Greenwood v. Oates, supra, and the facts of this case as discussed herein, we concur with the holding of the district court.
Affirmed.
ROBERTS, C.J., and ADKINS, BOYD and McCAIN, JJ., concur.
NOTES
[1] "The board may also reclassify lands zoned as agricultural as nonagricultural when there is contiguous urban or metropolitan development on two or more sides and when the board finds that the continued use of such lands for agricultural purposes will act as a deterrent to the timely and orderly expansion of the community."