## IN RE: PETITION OF MISSELL INVESTMENT CORP.

### Agenda Nos. 5141-5149

Property Appraisal Adjustment Board, Dade County

February 7, 1984

### APPEARANCES OF COUNSEL

**John Prunty** for petitioner.

**Daniel Weiss,** Assistant County Attorney, for Dade County.

### OPINION

MALCOLM B. WISEHEART, JR., Special Master.

This matter came to be heard before me upon the Petition of Missel Investment Corp. for review of the denial of agricultural classification of the Dade County Property Appraiser with respect to the lands described in the Folio Nos. above, and the undersigned having heard testimony of the witnesses and argument of counsel, and being otherwise fully advised in the premises, finds the facts relating to this matter as follows:

## FINDINGS OF FACT

1. The property comprising the above referenced folios consists of some thirteen (13) acres of land within the municipal limits of the City of North Miami Beach, Florida, abutting Biscayne Boulevard between N.E. 146th and 149th Streets.

2. The current owner of the property has not previously obtained agricultural classification with respect to any of the property.

3. A timely-filed application for agricultural classification was submitted by the Petitioner for the year 1983.

4. With respect to the property's actual use, Petitioner contended that the entire thirteen (13) acres were "disc plowed" during the year 1982 and that seeds (primarily beans and peppers) were planted during the month of December, 1982. James G. Pace testified that he had seen the property during the months of December, 1982 and January, 1983, at which time the entire property had been plowed and planted and crops had begun to grow. Cleveland Stewart, a tenant whose primary occupation is farming, testified that he had worked the property during the months of December, 1982, and January, February and March, 1983, and that he had harvested the crops in early April, 1983. The taxpayer produced documentary evidence consistent with the foregoing testimony, consisting of seed bills, fertilizer bills, and records relating to the disposition of the proceeds of harvest.

5. Mr. Vince Raul and Ms. Isis Recio of the Property Appraiser's Office testified that no inspections of the property had been made for the year in question prior to April 18, 1983 and that on that date there were portions of the property planted in rows of cabbage and other portions of the property in which cabbage grew in scattered patterns. The Property Appraiser's Office presented no testimony directly contradicting or rebutting the testimony and documentary evidence submitted by the Petitioner as to the farming operations which had been conducted during the months of December, 1982, and January, February, and March, 1983.

6. There was a conflict of testimony as to the zoning of the subject property; the Property Appraiser asserted that the subject was zoned RM-23 and the Petitioner has contended that the zoning is D-3. Both parties agree that the zoning is non-agricultural, at least in the sense that the applicable zoning, whatever its designation, does not specifically enumerate agriculture as a designated use and does permit non-agricultural development.

7. No evidence was submitted by the Property Appraiser that there

178

had been a change from agricultural to non-agricultural zoning at the Petitioner's request and the Property Appraiser's representatives, at the time of the hearing, stated that the decision to deny the Petitioner agricultural classification on the subject property was based primarily upon the lack of prior agricultural history and the existing non-agricultural zoning.

8. James G. Pace testified that the existing zoning was imposed as part of the comprehensive master plan of zoning adopted by the City of North Miami Beach in 1980 and was not imposed upon the property at the request of the Petitioner. This was affirmed by the testimony of Mary Foote, Vice Mayor of the City of North Miami Beach and a member of the City Council, who also testified specifically that no objection of any kind had been raised by the City of North Miami Beach and that such use was agreeable to, and permitted by, the Council of the City of North Miami Beach.

9. Based upon all of the testimony and evidence presented, the undersigned finds that the Petitioner was, in fact, engaged in "bona fide commercial agricultural use" with respect to the entirety of the subject property as of January 1, 1983.

## CONCLUSIONS OF LAW

The undersigned announced his ultimate finding, i.e., that the Petitioner was engaged in "bona fide commercial agricultural use" with respect to the entire property as of January 1, 1983 at the conclusion of the hearing in this matter which took place on August 30, 1983. Thereafter, leave was sought by the Property Appraiser's Office, and was granted, to submit to the undersigned a memorandum of law to be prepared by the County Attorney's office and to be directed to the issue of whether the non-agricultural zoning in this case precludes the granting of agricultural classification, notwithstanding the property's actual use.

Both parties have submitted lengthy and scholarly memoranda of law which have proven useful and informative to the undersigned. Rather than attempting to respond to each point raised by the parties' written submissions, the following discussion, which draws from portions of both briefs, simply states the undersigned's conclusions of law believed to be applicable to this case.

The relationship between "zoning" and classification of lands as "agricultural" or "non-agricultural" for the purpose of ad valorem taxation is basically two-fold:

(a) If land has been zoned to a non-agricultural use *at the request*

**179**

*of the owner* subsequent to the enactment of Florida Statutes Section 193.461(4)(a)3, the subject property must be classified as non-agricultural for purposes of ad valorem taxation. Otherwise stated, where there has been an owner-requested change in zoning to a non-agricultural use, there is an irrebuttable presumption that the owner is not entitled to agricultural classification. Florida Statutes Section 193.461(4)(a)3. It is true that other statutory provisions creating similar irrebuttable presumptions have been found by the Courts to violate due process and equal protection clauses of the Constitution. See *Bass v. General Development* 374 So.2d 479 (Fla. 1979). It is also true that there has been at least some authority that Florida Statutes 193.461(4)(a)3 may not apply where there is actual affirmative evidence of "condonation" of violations of non-agricultural zoning by the municipal authority. *Fogg v. Broward County* 397 So.2d 944 (4th DCA 1981). It may even be arguably true that the predictable result of the current trend in the agricultural classification cases will be the establishment of "actual use" as the overriding touchstone for agricultural classification. See *straughn v. Tuck*, 354 So.2d 368 (Fla. 1978) and *Roden v. K&K Land Management*, 368 So.2d 588 (Fla. 1978). Notwithstanding these observations, the fact remains that the Property Appraisal Adjustment Board of Dade County is simply an administrative agency, subject to the supervisory jurisdiction of the Circuit Court of the Eleventh Judicial Circuit, the Court of Appeal for the Third District, and the Florida Supreme Court. Accordingly, it should govern itself strictly and literally by the pronouncements of those Courts as well as the rules and regulations of the Florida Department of Revenue. Of course, it has no power to declare any statute unconstitutional and it has no business anticipating future developments in the law. In this respect, the undersigned adopts all of the arguments and the reasoning set out in the County Attorney's brief and agrees that until such time as the Florida Supreme Court announces its decision with respect to the certiorari proceedings currently pending in that Court with respect to *Fogg v. Broward County*, supra, the Property Appraisal Adjustment Board of Dade County should consider itself bound by the Third District Court of Appeal case of *Lauderdale v. Blake*, 351 So.2d 742 (3rd DCA 1977), in which an owner-requested change to non-agricultural zoning was held to preclude the granting of agricultural classification.

In the instant case, however, there was no evidence of an owner-requested change of zoning to non-agricultural use; therefore, the particular irrebuttable presumption set out in Florida Statutes

193.461(4)(a)3 is simply not applicable. Since Florida Statutes 193.461(4)(a)3 is not applicable, we are led to an examination of the relationship generally between "zoning" and the classification of lands as "agricultural" or "non-agricultural" for ad valorem tax purposes.

(b) Where there has been no owner-requested change of zoning to non-agricultural use, the role of zoning as a factor in determining agricultural classification is somewhat less dramatic. It loses its special overriding importance as a single determinant and gives rise to no particular presumption, rebuttable or irrebuttable. It is basically one factor to be considered among others.

The legislature probably could have (as the County Attorney has suggested in his brief) constitutionally singled out zoning (or presumably any other factor unrelated to the current physical use) as the sole determinant of agricultural classification for ad valorem tax purposes. This, however, the legislature simply has not done. Indeed, in setting out statutory factors to be considered by the Property Appraiser in classifying lands as agricultural or non-agricultural, the legislature did not even mention zoning. Florida Statutes 193.461(6)(a) lists the following factors to be considered by the Property Appraiser in making the classification:

1. The quantity and size of the property;

2. The condition of the property;

3. The present market value of the property as agricultural land;

4. The income produced by the property;

5. The productivity of the land in its present use;

6. The economic merchantability of the agricultural product; and

7. Such other agricultural factors as may from time to time become applicable.

Conspicuously absent, of course, is any explicit mention of zoning. "Zoning" enters into the list of statutorily permissible factors only under the general category of "such other agricultural factors as may from time to time become applicable". Florida Statutes 193.461(6)(a)7.

Nor has "zoning", as such, played a particularly prominent role in the decided cases as a factor to be considered in determining agricultural classification. Thus, in the leading case of *Greenwood v. Oates*, 251 So.2d 665 (Fla. 1971), the Florida Supreme Court suggested that the tax authorities might properly consider the following among other factors:

(a) Opinions of appropriate experts in the fields;

(b) Business or occupation of the owner;

(c) The nature of the terrain of the property;

(d) Economic merchantability of the agricultural products; and

(e) The reasonably attainable economic saleability of the product within a reasonable future time for the particular agricultural product.

See, also, Department of Revenue Regulation 12D-5.04(1), from which the above synopsis of *Greenwood v. Oates*, supra, is taken. Again, "zoning", as such, simply did not make the list.

Zoning, as a general factor and apart from the special circumstances contemplated by Florida Statutes 193.461(4)(a)3, comes to us basically as subparagraph (2) of Department of Revenue Regulation 12D-5.04, referred to above. There, zoning as a general factor is mentioned. Department of Revenue Regulation 12D-5.04(2) provides specifically as follows:

Other factors which are recommended to be considered are:

(a) Zoning (other than Section 193.461, F.S.), applicable to the land.

Even when mentioned, in Department of Revenue Regulation 12D-5.04(2), however, "zoning" as a general factor shares the spotlight, presumably on equal footing, with the following other factors to be considered:

(b) General character of the neighborhood;

(c) Use of adjacent property;

(d) Proximity of subject property to a metropolitan area and services;

(e) Principal domicile of the owner and family;

(f) Date of acquisition;

(g) Agricultural experience of the person conducting agricultural operation;

(h) Participation in governmental or private agricultural program or activities;

(i) Amount of harvest for each crop;

(j) Gross sales from the agricultural operation;

(k) Months of hired labor; and

(l) Inventory of buildings and machinery and the condition of same.

182

Thus, zoning, as a general factor, and apart from the special circumstances contemplated by Florida Statutes Section 193.461(4)(a)3, is simply one of the factors which should be considered, among others, by the Property Appraiser.

It is clear in this case that the Property Appraiser, who presented no evidence as to the actual use of the property as of January 1, 1983, considered zoning to be the sole factor, or a factor which was largely determinative in denying agricultural classification to the Petitioner's property.

The Property Appraiser, however, may not lawfully use zoning (apart from Florida Statutes Section 193.461(4)(a)3) or any other one factor as the sole criterion for the determination of agricultural classification. See *Czagas v. Maxwell*, 393 So.2d 645 (5th DCA 1981), and Florida Jurisprudence, Second Edition, Taxation Section 17:289.

The undersigned has considered the matter of the zoning of the subject property as one factor among others in finding that the subject property was in "bona fide commercial agricultural use" as of January 1, 1983. The zoning of the property does not particularly favor such use; however, that factor is simply outweighed in this case by the testimony of the corporate officers, the tenant farmer, the photographic evidence, and the documentary evidence, all of which convincingly indicate bona fide agricultural activity at the relevant time.

Having considered "zoning" in connection with the undersigned's factual determination (as announced at the conclusion of the hearing) that the property was in "bona fide commercial agricultural use" as of January 1, 1983, the undersigned concludes that there is no legal basis in this case now to re-visit that factor in further deliberations or to withhold agricultural classification from the subject property because of that factor.

## RECOMMENDATIONS

Based on the foregoing Findings of Fact and Conclusions of Law, the undersigned makes the following recommendations to the full Property Appraisal Adjustment Board:

1. That the Property Appraiser's denial of agricultural classification in Agenda Numbers 5141 through 5149, inclusive, with respect to the following described folios be reversed and set aside:

07-2221-21-0010
07-2221-21-0020
07-2221-21-0030

183

07-2221-21-0040
07-2221-21-0050
07-2221-21-0060
07-2221-21-0070
07-2221-21-0080
07-2221-21-0090

2. That the lands contemplated by the above referenced agenda numbers and folio numbers be classified "agricultural" for the year 1983 on the basis of crops.

3. That the assessments, agricultural differentials, and non-exempt portions of the assessments for the relevant folios be finally established for the year 1983 as follows:

| FOLIO NUMBER | PRIOR ASSESSMENT | AGRICULTURAL ADJUSTMENT | NON-EXEMPT ADJUSTMENT |
|---|---|---|---|
| 07-2221-21-0010 | 260,812. | 252,283. | 8,529. |
| 07-2221-21-0020 | 347,330. | 346,163. | 1,167. |
| 07-2221-21-0030 | 206,050. | 205,465. | 585. |
| 07-2221-21-0040 | 209,130. | 208,523. | 607. |
| 07-2221-21-0050 | 212,200. | 211,571. | 629. |
| 07-2221-21-0060 | 215,280. | 214,629. | 651. |
| 07-2221-21-0070 | 218,350. | 217,677. | 673. |
| 07-2221-21-0080 | 221,510. | 220,814. | 696. |
| 07-2221-21-0090 | 224,940. | 224,220. | 720. |

4. That the office of the Dade County Tax Collector be apprised of the foregoing and that, if the 1983 tax bills have not been paid, that they be re-calculated and re-issued in a manner consistent with the foregoing and, if the 1983 tax bills have been paid in accordance with the Property Appraiser's prior non-agricultural classification, that the office of the Dade County Tax Collector be ordered to re-calculate the said taxes and to issue an appropriate refund upon presentment of the Petitioner's receipted tax bills.