NESBITT, Judge.
This controversy concerns the assessment of ad valorem property taxes for the year 1978 on Omni International of Miami, which will be referred to as “Omni.” Appellant, F. B. Bystrom, as Property Appraiser of Dade County, will be referred to as “Appraiser.” Appellant, Randy Miller, Executive Director of the Department of Revenue of the State of Florida, will be referred to as “Department of Revenue.” The Dade County Property Appraisal Adjustment Board will be referred to as the “Board.” Collectively, the appellants will be referred to as the “Taxing Authority.” The appel-lees, who either own or have an interest in the affected real property, will be referred to as “Taxpayers.”
The Background
The object of this controversy is the Omni International of Miami, which is succinctly described as a “multi-purpose megastruc-ture.” This shopping center-hotel complex opened in June of 1977, for which year it was partially assessed and paid ad valorem taxes. The first year it was fully open and subject to taxation for an entire year was in 1978.
Utilizing the “cost approach,” the Appraiser’s predecessor placed the preliminary *1137 valuation as of January 1, 1978 at $67,251,-535. The Taxpayers filed a petition with the Board contesting the preliminary assessment, asserting a proper valuation of $37,000,000.
A special master’s report was adopted by the Board, utilizing an “income approach,” and resulting in a re-assessment of the just valuation to $59,560,000. The Appraiser, joined by the Department of Revenue, challenged the Board’s reduced valuation by filing suit in the circuit court pursuant to Section 194.032(6)(a), Paragraphs 1 and 2, Florida Statutes (1977).[1] The Taxpayers filed their answer and a counterclaim as expressly authorized by Sections 194.-032(6)(b) and 194.171, Florida Statutes (1977).[2]
It is pertinent to observe that while the rival claims are clothed in different raiment due to: (1) the Taxing Authority’s contention that the cost approach was the only proper approach in the assessment of the property; and (2) the Taxpayers’ contention that the proper method by which to ultimately assess the property was by utilizing the income approach, the claims were singularly identical with respect to the ultimate issue — the just valuation of the property under Article VII, Section 4 of the Florida Constitution and Section 193.011, Florida Statutes (1977).[3] In a non-jury trial, the *1138 claims were tried seriatim without either party requesting a motion for involuntary dismissal at the close of the other party’s presentation, as they might have, pursuant to Florida Rule of Civil Procedure 1.420(b). After consideration of memoranda in lieu of closing argument, the trial court entered final judgment upon the Taxpayers’ counterclaim finding the just valuation of the property as of January 1, 1978 to be $43,-000,000. The circuit court expressly adopted the income or economic approach and expressly rejected the Board’s re-evaluation as well as the underlying appraiser’s cost approach to the assessment of the real property.
Ordinarily, where a complaint and a counterclaim are tried together, each case is disposed of with respect to the testimony and evidence produced in that case. However, in the present case, the identity of issues and the submission of the case on post trial memoranda created a situation whereby each party relied upon the totality of the evidence. In entering the final judgment on behalf of the Taxpayers on their counterclaim, the trial judge considered testimony produced by the Appraiser during his case in chief that:
The Property Appraiser’s own testimony substantiated that the valuation of this property was fixed by the cost approach.
The parties acquiesced in the court’s consideration of the evidence as it was presented in its entirety. Neither party has appealed the propriety of that procedure. Consequently, even though the Taxing Authority only appeals the judgment in favor of the Taxpayers on their counterclaim, we will consider all of the evidence presented in this case.
Exclusion of Income Data Evidence
In its case in chief and defense of the Taxpayers’ counterclaim, the Taxing Authority offered into evidence the actual operating data from Omni for the fiscal year commencing January 1 and ending December 31, 1978, which data the trial court excluded principally on the ground that it was incompetent. We disagree and reverse the judgment on this basis.
It is true and undisputed that the polestar of determining just valuation lies in ascertaining the valuation as of January 1 of the taxable year. Lake Worth Towers, Inc. v. Gerstung, 262 So.2d 1 (Fla.1972); Walter v. Schuler, 176 So.2d 81 (Fla.1965). However, in determining the fair market value of the property on January 1, evidence which comes to light after that date may be relevant to the valuation as of January 1 as well as rebuttal to the Taxpayers’ appraiser’s valuation.
In Homer v. Connecticut General Life Insurance Company, 213 So.2d 490, 492 (Fla. 3d DCA 1968), we stated, “The assessment may be defended by the presentation of any legally competent and relevant evidence proving or tending to prove the fair market value of the property.” The necessary correlative of this proposition is that the presentation of any legally competent or relevant evidence is probative of just valuation.
 As substantive evidence, the actual income of the property is clearly relevant in reaching a valuation that conforms to the willing buyer-willing seller concept. See Walter v. Schuler, supra. Because Omni was a unique structure and had only been *1139 in operation for five months, there was no trend from which the appraiser could estimate income.[4] Since it is not unusual for the appraiser to begin his assessment after January 1, there is no reason why he should be precluded from utilizing actual data insofar as it reflects upon conditions on January 1.
The Taxpayers’ appraiser admitted that he used data which came to light after January 1 in reaching his determination as to the proper assessment. He stated that he did not start the appraisal until six months after the valuation date. He continued:
What I did was to take the list of the people who they had as being firm prospects and so on, and I went through Omni with a list in my hand to see if the tenants were, in fact in possession and some of them were. Some never came in.
The Taxpayers can hardly be heard to object to the use of such data by the Property Appraiser.
Furthermore, Section 195.027(3), Florida Statutes (1977), authorizes the appraiser to obtain access to a taxpayer’s records which would aid the appraiser in rendering his assessment. Florida Administrative Code Rule 12D-1.05(l)(c)(3), promulgated pursuant to the statute specifically provides for access to records of leases, both before and after the January 1 date. This rule then assumes the relevancy of data after the January 1 date in reaching a proper valuation.[5]
The relevance of actual income data as rebuttal becomes apparent when the testimony of the Property Appraiser’s predecessor in office, A. H. Blake, and the Taxpayers’ appraiser, are examined together. In the Taxing Authority’s case in chief, Mr. Blake stated that, in utilizing the income approach to arrive at just valuation, it becomes necessary to forecast the income of the property. He testified that the actual income would be the best way to measure the accuracy of that forecast. The trial judge excluded this actual income. The Taxpayers’ appraiser similarly testified that he would utilize projections of the income of the property in arriving at his appraisal. For example, he stated that he considered the collapse of the operation which Omni had in Atlanta and from that estimated that tenants would only be able to afford 50% of the rent for which they were obligated to pay. He therefore adjusted the income accordingly.
On rebuttal, the Taxing Authority sought once again to introduce the actual operating income to rebut the Taxpayers’ projection. It was proffered that the actual data would prove that the Taxpayers’ appraiser did not hypothecate a knowledgeable buyer and seller because his projection was grossly at variance with actual conditions. We agree with the Taxing Authority that this rebuttal testimony was highly relevant.
In reaching this conclusion, we recognize that in some cases annual operating revenue or losses become so remote in relation to just valuation that the trial court need not accord such testimony much weight—however, that determination must be made by the trier of fact in each case.
Having determined that the income data is relevant as both substantive and rebuttal evidence, it is admissible un *1140 less otherwise prohibited by law. Section 90.402, Florida Statutes (1977). We do not find that the January 1 date for fixing the valuation of property is a prohibition against the admission of evidence which comes to light after that date. Similarly, we do not find that the July 1 deadline for completion of the tax assessment[6] was intended as a prohibition. The requirement that the appraiser complete all assessments on or before July 1 of each year, pursuant to Sections 193.023(1) and 194.011(1), Florida Statutes (1977) is nothing more than a legislative direction and grant of authority. It is the triggering mechanism that activates a panoply of taxation including challenges thereto and the ultimate determination of millage culminating in the completion of tax bills by the tax collector. Thus, these statutes in no way prohibit the introduction into evidence of information generated after January 1.
Consequently, the trial court’s exclusion of such data is erroneous.
Failure to Consider Testimony of Taxing Authority’s Expert
The Taxing Authority contends that the trial court improperly failed to consider the expert testimony of the Appraiser’s predecessor in office, A. H. Blake.
Blake testified that he was a real estate broker and a member of various appraisal societies as well as a certified property appraiser. His qualifications were not challenged. During the case in chief, Blake stated his opinion as to the fair market value of Omni, as distinguished from the method by which he arrived at his preliminary assessment. The final judgment appealed from entirely ignored that testimony, finding, without explanation:
No expert witnesses were called on behalf of the Plaintiff-Counterdefendant.[7]
As a qualified expert, Blake was entitled to give his opinion in court involving real property ad valorem taxation and thus such testimony should have been considered. Failure to do so constituted either a misapprehension of the legal effect of the evidence or a palpable misconception of the facts, either of which is reversible error under the circumstances. Holland v. Gross, 89 So.2d 255 (Fla.1956); Winton v. Stone, 107 Fla. 636, 145 So. 845 (1933); Whitman v. Pet Incorporated, 335 So.2d 577 (Fla. 3d DCA 1976), cert. dismissed, 348 So.2d 951 (Fla.1977).
For the trial court’s exclusion of actual operating income data for the fiscal year and failure to consider Blake’s expert opinion, we reverse and remand for a new trial on the Taxpayers’ counterclaim. It therefore becomes essential to the retrial of the counterclaim that we examine appellant’s other contentions, some of which we find to be meritorious.
The Burden of Proof
In the present case, the Appraiser challenged the Board’s reduced valuation by the filing of a suit in circuit court authorized by Section 194.032, supra. The Taxpayers filed an answer which contained a counterclaim seeking a valuation lower than that which was rendered by the Board. The Appraiser did not appeal the adverse decision upon his original claim and therefore we need not consider it.
On the Taxpayers’ counterclaim, the trial court entered final judgment favorable to the Taxpayers further reducing the Board’s reevaluation. The Taxing Authority appealed that judgment and now contends that the trial court erred by shifting and allocating to it, what was properly the Taxpayers’ burden of proof upon their counterclaim. We agree.
Section 194.032(6)(c), Florida Statutes (1977) places the burden of proof upon the *1141 initiator of the action. Here, the Taxpayers initiated the action upon their counterclaim. In Grandway Credit Corporation v. Brown, 295 So.2d 714 (Fla. 4th DCA 1974), the court recognized that a counterclaim is a separate cause of action. Consequently, the Taxpayers are required to meet their burden of proof on the counterclaim.
We disagree with the appellant’s further assertion that the Taxpayers should have been required to prove their case to the exclusion of all reasonable hypotheses of a correct valuation — however, this requires some elaboration.
(a) Presumptive Validity of Official Public Acts
Florida Supreme Court decisions enunciate the common law rule that acts of public officials are presumptively valid and, in furtherance of the societal good, operate to place upon the challenging party, the burden of proof concerning the nonexistence of presumed facts. As applied to ad valorem taxation in Florida, it is doctrinaire that the appraiser, in reaching his assessment, must consider each factor enumerated in Section 193.011, supra, although he may assign to each criterion such weight as he deems appropriate. Straughn v. Tuck, 354 So.2d 368 (Fla.1978). By doing so, the appraiser is satisfying the constitutional mandate that property be assessed at just valuation. Art. VII, § 4, Fla.Const. Having utilized the necessary factors, the appraiser’s preliminary assessment enjoys a presumption in favor of its correctness. This presumption arises from public policy considerations. In Schleman v. Connecticut General Life Ins. Co., 151 Fla. 96, 104, 9 So.2d 197, 200 (1942), that Court stated:
We are fully aware of the difficulty of fixing with certainty the full cash value of property and the great variance in values set by persons of like experience and judgment, all making estimates conscientiously. Because of this inexactitude considerable leeway should be granted the official whose duty it is to make assessments and because of his position his valuations should not be easily disturbed ....
See also Harbond, Inc. v. Anderson, 134 So.2d 816 (Fla. 2d DCA 1961). The presumption operates to place upon the challenging party the burden of overcoming the appraiser’s preliminary assessment by sufficient and appropriate allegations and proofs excluding every reasonable hypothesis of a legal assessment. Straughn v. Tuck, supra; District School Board of Lee County v. Askew, 278 So.2d 272 (Fla.1973); Homer v. Dadeland Shopping Center, Inc., 229 So.2d 834 (Fla.1970). Conversely, the appraiser’s failure to at least consider the necessary predicates renders his valuation invalid. Straughn v. Tuck, supra; Palm Corporation v. Homer, supra.
Even in the absence of the common law, the Florida Evidence Code, Sections 90.-302(2) and 90.304, Florida Statutes (1977), mandates the result stated above. The Law Revision Council Note to Section 90.-304, Florida Statutes Annotated (1976) includes examples involving acts of public officials. Consequently, even without the historical development of the law in Florida, Sections 90.302(2) and 90.304, supra, would control.
The presumptive validity which has been accorded the appraiser’s preliminary assessment is equally applicable to the Board’s re-evaluation. Bath Club, Inc. v. Dade County, 394 So.2d 110 (Fla.1981); Sanders v. Crapps, 45 So.2d 484 (Fla.1950); Dick v. State ex rel. Harris, 153 So.2d 844 (Fla. 2d DCA 1963). Since as early as Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. 503 (1919), it has been the rule that all officers involved in the ad valorem taxation mechanism of state government must properly and even-handedly apply the applicable laws and criteria. In City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115 (1925), the Supreme Court, in considering the Board’s earliest progenitor, the Tax Equalization Board,[8] stated:
*1142 The fixing of a valuation upon property by a tax assessor for purposes of taxation, and the equalization thereof by a board of equalization, are administrative acts, involving the exercise of administrative discretion, and a court of equity will not in general control that discretion unless it is illegally or fraudulently exercised or exerted in such manner or under such circumstances as will amount in law to a fraud, [citations omitted]
105 So. at 120. See also Stiles v. Brown, 182 So.2d 612 (Fla.1966).
Implicit in these decisions is that the Board, before overturning, correcting, or equalizing the appraiser’s preliminary assessment, must accord presumptive validity to the preliminary assessment. Fla.Admin. Code Rule 12D-10.03(3);[9] 1972 Op.Att’y Gen.Fla. 072-349 (October 12, 1972). In District School Board of Lee County v. Askew, supra, the Court considered whether the Auditor-General could ignore the presumptive correctness of the preliminary assessment. The Court answered this question in the negative stating:
[t]he State has no power to ignore the presumption of correctness attendant to the official assessments. To rely on the findings of the Auditor-General, as required by Fla.Stat. § 236.07(8), F.S.A., ignoring the official assessments, is to negate the discretion granted to the assessors, the discretion necessary to the job, attendant to all educated estimates, and uniformly recognized in the opinions of this Court. We conclude that a finding by the Auditor-General different from that reached by a county tax assessor is, therefore, insufficient to override the official assessment in the absence of a showing that the official assessment represented a departure from the requirements of law and not merely the differences of opinion to be expected when experts approach the subjective business of assessing property.
278 So.2d at 277. We do not ascribe to the Board the power to arbitrarily override the appraiser where the Supreme Court has denied that right to the Auditor General. Thus, when a taxpayer chooses to challenge the appraiser’s preliminary assessment before the Board,[10] he is required to overcome the presumptive validity in favor of the preliminary assessment.
Where the taxpayer is successful in overcoming this presumption, he must, in order to prevail, additionally present evidence with respect to the just valuation of the property utilizing all the applicable statutory criteria. See § 193.011, supra. The Board is bound by the same standards as the property appraiser in determining just valuation. Fla.Admin.Code Rule 12D-10.-03(1); Art. VII, § 4, Fla.Const.
As a result of the foregoing, when the Board properly overturns the assessor’s preliminary assessment and utilizes all the relevant statutory criteria, it is acting in the same official capacity as was the appraiser. Consequently, the identical public policy considerations exist to accord the Board’s re-evaluation presumptive validity. Bath Club, Inc. v. Dade County, supra, 394 So.2d at 113; Sanders v. Crapps, supra, at 488. If it were otherwise, proceedings before the Board would amount to nothing more than a way station for a disgruntled party en route to circuit court. When the Board’s jurisdiction to review the preliminary assessment is invoked and the Board properly acts, we do not perceive that the Legislature intended that it become a useless act. We observe, as we did with respect to the appraiser, that even in the absence of deci-sional law, Sections 90.302(2) and 90.304, supra, would accord the official acts of the Board presumptive validity.
*1143 (b) The Taxpayer in Circuit Court[11]
Whether the Board upholds the appraiser’s preliminary assessment or overturns it, the taxpayer may nonetheless seek review in circuit court. §§ 194.032(6)(b) and 194.-171, supra. This proceeding is a trial de novo, Bath Club, Inc. v. Dade County, supra, rather than an appellate proceeding. See Williams v. Law, 368 So.2d 1285 (Fla.1979). As previously observed, the burden of proof is upon the party initiating the action. § 194.032(6)(c), supra. The de novo provision of the statute does not preclude a presumption from arising in favor of the appraiser or the Board. See Hollywood Jaycees v. Department of Revenue, 306 So.2d 109, 112 (Fla.1975). A trial de novo affords the circuit court judge an opportunity to determine the credibility of the witnesses as well as the weight and sufficiency of the evidence.
If the Board rejects the taxpayer’s challenge and upholds the preliminary assessment, that assessment remains viable and the taxpayer’s challenge in circuit court will be to the preliminary assessment. See Bath Club, Inc. v. Dade County, supra; Calder Race Course, Inc. v. Overstreet, 363 So.2d 631 (Fla. 3d DCA 1978). Where the appraiser has considered the relevant criteria, the taxpayer must overcome the presumptive validity of the appraiser’s preliminary assessment to the exclusion of every reasonable hypothesis of a legal assessment. Straughn v. Tuck, supra; §§ 90.302(2) and 90.304, Fla.Stat. (1977), supra.
On the other hand, where the taxpayer overcomes the appraiser’s presumption before the Board, that re-evaluation replaces the preliminary assessment. The taxpayer’s challenge in circuit court would therefore be to the Board’s re-evaluation. In that posture of the case, the taxpayer must demonstrate: (1) that the Board did not render a proper re-evaluation because the presumptive validity of the initial assessment was not overcome; (2) the Board did not consider the relevant criteria in reaching its re-evaluation, and thus its re-evaluation was vitiated, or a combination of (1) and (2); or (3) the presumptive correctness of the Board’s re-evaluation was overcome by evidence which excludes every reasonable hypothesis of a legal assessment.
(c) The Present Case
Applying the foregoing analysis to the present facts, we conclude that the trial court correctly determined that the burden of proof was satisfied by the greater weight of the evidence.
The Taxpayers challenged the initial appraisal before the Board which reduced it. In circuit court, the Taxpayers, by way of counterclaim, alleged that the preliminary assessment as well as the Board’s reduction were illegal. The Appraiser’s answer to the counterclaim admitted the Board’s reduction was illegal but denied the illegality of its preliminary assessment.
In this case, therefore, any issue with respect to the Board’s reduction was eliminated by the pleadings. Any presumptive validity with respect to the Appraiser’s initial assessment was vitiated by Blake’s own testimony that his office only utilized the “cost approach” in the preliminary assessment of Omni. As a result, the burden of proof was on the Taxpayers — to demonstrate the validity of their claimed valuation by the greater weight of the evidence. In the judgment appealed from, the trial court found that the Taxpayers had prevailed on their counterclaim by the greater weight of the evidence with which we agree.
“Cost Approach” Versus “Income Approach”
Just valuation, as mandated by Article VII, Section 4 of the Florida Constitu *1144 tion, is to be arrived at by the application and consideration of all of the statutory factors delineated by Section 193.011, supra. The actual assessment figure is arrived at by following the “cost approach,” the “market approach,” or the “income or economic approach,” or any combination thereof. The weight given to each of the factors and the reliance on a particular approach is dependent upon the type of property being assessed. The Appraiser points to our decisions in Calder Race Course, Inc. v. Overstreet, supra, and Town of Bay Harbor Island v. Lancelot Associates, 243 So.2d 437 (Fla. 3d DCA 1971) for the proposition that the trial court should have utilized the cost approach in determining the assessment of Omni.
In Town of Bay Harbor Island, the assessment by the appraiser was premised upon a consideration of all of the factors set forth in Section 193.011, supra; however, he determined that an insufficient period of time had elapsed to have warranted utilization of the income approach.
In Calder, we expressly indicated that either the cost approach or the income approach might properly have been utilized. In light of the fact that the race track facilities were “practically new,” the assessment was found to be within the discretionary limits. Therefore, the use of the cost approach in that case was affirmed because of the failure of the taxpayer to sustain his burden of proof of excluding every reasonable hypothesis of a legal assessment.
Although Omni was also practically new, it did have a partial year of operating experience upon which an income approach could be based. Consequently, upon remand, the trial court will be free to accept any approach which is persuasive and meets the constitutional and statutory criteria.
Improper Adjustment for the “Cost of Sales”
The trial court specifically found that upon all the statutory factors required by Section 193.011, supra, the income approach was the proper approach and determined that the assessment of the property as of January 1, 1978 should be $45,000,000. Having opted for the income approach, it nonetheless deducted $2,000,000, finding that “the financing of this venture was grossly unconventional and atypical, and under the provisions of section 193.011(8), Florida Statutes, an allowance should be made for this.” Section 193.011(8), Florida Statutes (1977) provides:
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements.
While this method of valuation must be considered in making an assessment, it is only appropriately used where there has been an actual sale. “Net proceeds” could not otherwise be calculated. Where an actual sale is encountered so that this valuation method is operative; then, under that limited circumstance, an appropriate adjustment should be made for “unconventional or atypical financing” so as to accurately compute just value.
Since no facts were presented to the trial court to indicate that the valuation was based upon a sale so as to activate the application of the “costs of sale” factor, we observe that, upon remand, it would not be appropriate to further reduce the assessment, because of this factor, in order to arrive at the just valuation.
Erroneous Computation of Interest
When the Taxpayers initiated the counterclaim as authorized pursuant to Sections 194.032(6)(b) and 194.171, supra, they tendered to the Tax Collector a good faith payment of the admitted taxes due and owing based upon a $37,000,000 valuation as required by Section 194.171(4), supra.[12] The trial court determined the just valuation of the Omni to be $43,000,000. The Taxpayers were expressly required by the judgment to pay to the Tax Collector taxes on the addi *1145 tional ad valorem value of $6,000,000 with interest to accrue on this deficiency at the rate of eight per cent per annum commencing ten days from date of judgment. This was plain error. Section 194.192(2), Florida Statutes (1977), expressly provides:
(2) If the court finds that the amount of tax owed by the taxpayer is greater than the amount the taxpayer has in good faith admitted and paid, it shall enter judgment against the taxpayer for the deficiency and for interest on the deficiency at the rate of 8 percent per annum from the date the tax became delinquent or from January 1, 1971, whichever is later, . . . [emphasis supplied]
Consequently, upon remand, should the trial court enter a deficiency assessment against the Taxpayers in excess of their good faith payment, interest must be required upon the principal amount of the deficiency at the rate of eight per cent per annum from the date the tax became delinquent.
For the foregoing reasons, the final judgment appealed from is reversed and remanded for proceedings not inconsistent herewith.

. 194.032 HEARING COMPLAINTS.—

(6) Appeals of the board’s decision shall be as follows:
(а) If the property appraiser disagrees with the decision of the board, he may appeal the decision to the circuit court if one or more of the following criteria are met:
1. The property appraiser determines and affirmatively asserts in any legal proceedings that there is a specific constitutional or statutory violation, or a specific violation of administrative rules, in the board’s decision, except that nothing herein shall authorize the property appraiser to institute any suit to challenge the validity of any portion of the Constitution or of any duly enacted legislative act of this state;
2. There is a variance from the property appraiser’s assessed value in excess of the following: 15 percent variance from any assessment of $50,000 or less; 10 percent variance from any assessment in excess of $50,-000 but not in excess of $500,000; 7V2 percent variance from any assessment in excess of $500,000 but not in excess of $1,000,000; or ....

. 194.032 HEARING COMPLAINTS.—

(б)(b) Any taxpayer may bring an action to contest a tax assessment pursuant to s. 194.-171.
194.171 CIRCUIT COURT TO HAVE ORIGINAL JURISDICTION IN TAX CASES.—
(1) The circuit courts have original jurisdiction at law of all matters relating to property taxation. Venue is in the county where the property is located.
(2) No action shall be brought to contest a tax assessment after 60 days from the date the assessment being contested is certified for collection under s. 193.122(2).
(3) Before a taxpayer may bring an action to contest a tax assessment, he shall pay to the collector the amount of the tax which he admits in good faith to be owing. The collector shall issue a receipt for the payment, and the taxpayer shall file the receipt with his complaint.
(4) No action to contest a tax assessment may be maintained unless all taxes on the property which the taxpayer in good faith admits to be owing, including taxes assessed in years after the action is brought, are paid before they become delinquent.
(5) Pending actions to contest tax assessments shall be dismissed unless the taxpayer shall have paid to the collector all taxes on the property which he in good faith admits to be owing, including taxes assessed in years after the action is brought.
(6) The clerk of the circuit court shall, after deducting his statutory fee, pay to the collector all taxes which have been admitted to be due and have been deposited in the registry of the court in connection with pending actions to contest tax assessments.

. 193.011 FACTORS TO CONSIDER IN
DERIVING JUST VALUATION. — In arriving at just valuation as required under s.4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm’s length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable local or state land use regulation and considering any moratorium imposed by ex *1138 ecutive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium prohibits or restricts the development or improvement of property as otherwise authorized by applicable law;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements.

. The propriety of using the income approach for a new property is discussed infra.

. Similarly, when comparable sales are considered in reaching a just valuation, a sale after January 1 of the taxable year may be relevant. Here, the Taxpayers’ appraiser readily conceded that he used the comparable sale of the Sheraton Four Ambassadors in March of 1978. The rationale behind the use of such evidence is that a sale of this size is negotiated over a long valuation as of January 2. Of course, the further the sale is away from January 1, the less probative it may become.
In Southern Bell Telephone and Telegraph Company v. County of Dade, 275 So.2d 4 (Fla. 1973), the taxpayer introduced into evidence sales ratio studies based upon comparable sales occurring through June 30 of the taxable year. Because the opinion does not reflect an objection to the admission of that testimony, that case is merely persuasive support for the use of comparable sales after January 1.

. The July 1 date is not a fixed point because Section 193.023, Florida Statutes (1977) authorizes the Department of Revenue to give an extension to the appraiser to complete the tax ' rolls.

. We noted, at the outset, that the trial judge considered all the evidence in its entirety in rendering a decision upon the counterclaim. Having done so, he was not free to exclude the Appraiser’s testimony given during the case in chief.

. For the geneology tracing the present Board back to its earliest progeny, see Bath Club, Inc. v. Dade County, supra.

. Rules and regulations of an administrative agency made under the power conferred by the statute have the force and effect of the statute if made within the scope and intent of the authority conferring them. Florida Livestock Board v. W. G. Gladden, 76 So.2d 291 (Fla. 1954).

. A taxpayer is not required to seek review before the Board. See §§ 194.032(3) and 194.-171, Fla.Stat. (1977). In lieu of this, a taxpayer may directly challenge the appraiser’s preliminary assessment in circuit court. § 194.171, supra.

. With the inception of Section 194.032(6) [Ch. 76-234, Laws of Florida, effective July 1, 1976], the Legislature inaugurated a change by permitting the property appraiser, under the limited and defined circumstances of Section 194.032(6)(a), supra, to judicially challenge the Board’s reassessment in circuit court. In the present case, the Appraiser initiated a challenge in circuit court and was unsuccessful. Because he did not appeal the denial of relief, we need not consider the mechanism by which the Tax Appraiser may challenge the Board’s re-evaluation.

. This section is reproduced in full in n.2, supra.