477 So.2d 585 (1985)
Franklin B. BYSTROM, As Property Appraiser of Dade County, Florida, Appellant,
v.
UNION LAND INVESTMENTS, INC., and Randall Miller, Director of the Department of Revenue, Appellees.
No. 84-1604.
District Court of Appeal of Florida, Third District.
August 6, 1985.
Rehearing Denied November 12, 1985.
Robert A. Ginsburg, Co. Atty., and James K. Kracht, Asst. Co. Atty., for appellant.
Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, Paul A. Louis and Frank Nussbaum, Miami, for appellees.
Before HENDRY, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The Property Appraiser of Dade County, Florida, appeals from a ruling of the trial court that determined that as of January 1, 1980, "there had been substantial and sufficient preparatory work done on the [appellee's] land to constitute use of the property for a bona fide agricultural purpose" so as to entitle the appellee-property owner to an agricultural classification and corresponding favorable tax assessment of its land.[1] We reverse this ruling upon a holding that although there is no dispute that the property owner intended to use the property in question for agricultural purposes during 1980 and thereafter, the property owner failed to prove, as was its burden, that it was being so used on January 1, 1980.
In September 1979, Union Land Investments, Inc. (Union) purchased a 180-acre tract of land in southwest Dade County. At the time of purchase, the property contained a heavy overgrowth of trees and shrubs and was substantially covered with *586 debris. In October 1979, Union entered into a farm lease with John Mitchell, who immediately subleased approximately 120 acres to Frederick Rutzke. Mitchell and Rutzke began clearing the land in late October or early November 1979. All of the lease agreements required that the property be cleared by February 1, 1980.
Pursuant to Section 193.461(3)(a), Florida Statutes (1979), Union timely applied for an agricultural classification for the property for the year 1980. After an investigation and physical inspections of the property, the Dade County Property Appraiser determined that the property in question was not being used primarily for bona fide agricultural purposes as of January 1, 1980, and therefore denied agricultural classification.[2] Union filed petitions with the Property Appraisal Adjustment Board contesting this decision. Following a hearing, a special master for the Board recommended granting agricultural classification to the property for 1980, and the Board adopted the recommendation. The effect of the Board's decision was to reduce the Property Appraiser's non-agricultural assessment of $1,435,326 to an agricultural assessment of $48,274.
The Property Appraiser filed an action pursuant to Section 194.032(6)(a) 1. and 2., Florida Statutes (1981), seeking to reinstate his original non-agricultural assessment of the property. After a non-jury trial, the lower court entered its final judgment dismissing the Property Appraiser's complaint, in effect upholding the Board's determination that the 180-acre tract was entitled to agricultural classification for the year 1980.
Chapter 59-226, Laws of Florida (1959), Florida's "Greenbelt Law," extended preferential treatment to lands "used exclusively for agricultural purposes." All later enactments have consistently imposed this use requirement. Straughn v. Tuck, 354 So.2d 368, 370 (Fla. 1977), adhered to in Roden v. K & K Land Management, Inc., 368 So.2d 588 (Fla. 1978). In Hausman v. Rudkin, 268 So.2d 407, 409 (Fla. 4th DCA 1972), the Fourth District explained:
"The favorable tax treatment provided by the statute is predicated on land use, that is, physical activity conducted on the land. Smith v. Ring, Fla.App. 1971, 250 So.2d 913; Smith v. Parrish, Fla.App. 1972, 262 So.2d 237. Under the terms of the statute, as we understand them, if the land is physically used for agricultural purposes, it must be accorded agricultural zoning, provided the use is `primarily for bona fide agricultural purposes.' (Emphasis added). The term `primarily' simply signifies that the agricultural use must be the most significant activity on the land where the land supports diverse activities. See Walden v. Borden Company, Fla. 1970, 235 So.2d 300. The terms `bona fide' as used in the statute impose the requirement that the agricultural use be real, actual, of a genuine nature  as opposed to a sham or deception. See Sapp v. Conrad, Fla. App. 1970, 240 So.2d 884, 889 (dissent) and Smith v. Ring, supra."[3]
*587 This "actual use" requirement is manifest in the long-standing practice of assessing lands used for agricultural purposes on an acreage basis.[4]See, e.g., St. Joe Paper Co. v. Adkinson, 400 So.2d 983 (Fla. 1st DCA 1981) (non-productive 660-foot strip of beachfront property, comprising perimeter of 37,500-acre tract of forest land, properly classified non-agricultural); Hausman v. Hartog, 371 So.2d 1036 (Fla. 4th DCA 1978) (upholding trial court's agricultural classification of twenty-five-acre orange grove, but reversing same characterization of remaining fifty-five acres of vacant land owned by appellee); Mackle Co. v. Metropolitan Dade County, 220 So.2d 422 (Fla. 3d DCA 1969) (only south half of 320-acre tract accorded assessment as agricultural lands). See also Greenwood v. Oates, 251 So.2d 665 (Fla. 1971).
It is, however, the actual use of property as of the assessment date that controls in determining entitlement to the preferential treatment of agricultural classification. Under the taxing statutes the assessment date is January 1 of each year, and the character of a particular parcel of land, including whether or not it should be classified as agricultural, is determined by its use as of that date. Bass v. General Development Corp., 374 So.2d 479, 482 (Fla. 1979); Lanier v. Overstreet, 175 So.2d 521 (Fla. 1965); Haines v. Holley, 234 So.2d 152 (Fla. 2d DCA), cert. denied, 238 So.2d 428 (Fla. 1970); § 192.042, Fla. Stat. (1979). See Withers v. Metropolitan Dade County, 290 So.2d 573 (Fla. 3d DCA 1974). See also Dade County Taxing Authorities v. Cedars of Lebanon Hospital Corp., 355 So.2d 1202 (Fla. 1978). Acknowledging this proposition, the trial court found that even prior to January 1, 1980, the property owner had embarked upon a good faith program of land preparation and planting.
Despite the trial court's finding that planting of the property was under way by January 1, 1980, the undisputed evidence is that the very first planting  of okra  occurred on January 24, 1980. Moreover, without dispute, as of January 1, 1980, at least ninety per cent of the property was uncleared, impassable and garbage infested: a January 16, 1980, inspection of the property revealed that as of then no more than ten per cent of the 180 acres had been cleared; and an aerial photograph of the property taken on February 4, 1980, showed that fifty per cent of the land as of then still remained uncleared.[5] While, concededly, by the middle of 1980, wells were dug and all usable parts of the 180 acres had been cleared and planted, there is simply no evidence to support the trial court's finding of agricultural use as of January 1, 1980.
We reach this conclusion not because, as the Property Appraiser urges, the act of clearing of land is too ambiguous to be considered as evidence of agricultural use. Indeed, we assume that the act of clearing, *588 if combined with other actions evincing the property owner's bona fide intent to use the land for agricultural purposes (for example, in this case, the lease agreements requiring agricultural use and the post-January 1, 1980, agricultural activities) would be sufficient to show that the clearing of the land constituted an agricultural use. See Mississippi Employment Security Commission v. Ballard Co., 228 So.2d 361 (Miss. 1969) (clearing of land by farmer's own employees deemed to be "agricultural labor" under state law exempting such labor from taxation for employment security purposes); Janes Bros., Inc. v. Perry, 229 So.2d 147 (La. Ct. App. 1969), cert. denied, 255 La. 788, 232 So.2d 515 (1970) (machinery used to clear and prepare land for planting exempt from taxation under provision of state constitution). See also Withers v. Metropolitan Dade County, 290 So.2d 573, 575 (in dictum stating that in order to establish an actual agricultural use for favorable tax treatment "[a]t the very minimum, there must be some preparatory work (clearing or planting or cultivation) done on the land.") Cf. Mackle Co. v. Metropolitan Dade County, 220 So.2d 422 (Fla. 3d DCA 1969) (clearing of land standing by itself not enough for agricultural classification where lessee testified he did not intend to farm the cleared land at any time during the forthcoming year).[6] But even given the assumption that the act of clearing in this case, combined with other actions evincing an intent to use the land for agricultural purposes, would have been enough to support the trial court's decision, there simply is no evidence that any specific amount of land was cleared as of January 1, 1980. The burden to present such evidence was the property owner's.
The trial court, however, was apparently of the view that it was up to the Property Appraiser to prove that the property was not being used for agricultural purposes on January 1, 1980. While the Appraiser undertook to and did establish that at least 160 acres were not so used as of January 1, 1980 (and would thus, in any event, have been entitled to classify and assess that much of the land as non-agricultural), it was not his burden to prove this negative. The Property Appraiser's assessment of $1,435,326 based on a non-agricultural classification was entitled to a presumption of correctness despite the subsequent decision of the Property Appraisal Adjustment Board overturning that assessment, see Blake v. Oceancoast Corp., 417 So.2d 1002 (Fla. 3d DCA), rev. denied, 424 So.2d 762 (Fla. 1982); Bystrom v. Equitable Life Assurance Society of the United States, 416 So.2d 1133 (Fla. 3d DCA 1982), rev. denied, 429 So.2d 5 (Fla. 1983); Muss v. Blake, 416 So.2d 2 (Fla. 3d DCA), rev. denied, 424 So.2d 762 (Fla. 1982), and that presumption was not overcome.
The trial court's conclusion that the Property Appraiser's assessment was not entitled to a presumption of correctness apparently derives from its mistaken view that in determining a property owner's entitlement to agricultural classification, the Appraiser was required to consider each and every statutory factor in Section 193.461(3)(b), and not having done so, no presumption of correctness attached to his classification. It is clear, however, that Section 193.461(3)(b), which provides that "[i]n determining whether the use of the land for agricultural purposes is bona fide, the following factors may be taken into consideration ..." (emphasis supplied), does not mandate that the Property Appraiser consider all or any of the factors. Unlike Section 193.011 concerning valuation of regular property and Section 193.461(6)(a) concerning valuation of lands classified as agricultural, both of which provide that the Property Appraiser "shall" consider the listed factors,[7] no such mandatory requirement is imposed by Section 193.461(3)(b). The non-mandatory standards *589 for classifying land as agricultural or not were, moreover, approved in Straughn v. Tuck, 354 So.2d 368, 370 (Fla. 1977), in which the court declared: "`[U]se' is still the guidepost in classifying land, although other specifically enumerated factors relative to use may also be considered." Accord, Greenwood v. Oates, 251 So.2d 665 (Fla. 1971). The court's interpretation in Straughn falls squarely within the well-established rule set forth in St. Joe Paper Co. v. Ray, 172 So.2d 646, 648 (Fla. 1st DCA 1965), that "[u]nless specifically declared otherwise, all the provisions of law relating to the assessment and collection of revenue are directory... ."
Therefore, the Property Appraiser's classification of the property as non-agricultural is presumed correct, and that presumption was not overcome by evidence that any identifiable portion of the property was used for agricultural purposes as of January 1, 1980. That being so, the case is remanded to the trial court with directions to enter judgment for the Property Appraiser by reinstating his non-agricultural assessment of $1,435,326.
Reversed and remanded, with directions.
HENDRY, J., concurs.
BASKIN, Judge (dissenting).
The issue presented in this appeal is whether the land in question was used for bona fide agricultural purposes on January 1, 1980. A special master, the Property Appraisal Adjustment Board, and the trial court all concluded that the evidence presented was sufficient to qualify the property, owned by Union Land Investments, Inc., for an agricultural classification for 1980 tax purposes. The majority rejects the findings of fact and conclusions of law drawn by these examiners in favor of the Property Appraiser's opinion that the property was not being used for bona fide agricultural purposes as of January 1, 1980. In my opinion, neither the record nor the applicable case law supports the majority view.
The record discloses, and the trial court found, that prior to January 1, 1980, the lessees of the property had begun to prepare and clear the land in order to plant and grow crops. The majority concedes that the act of clearing the land, combined with actions evincing an intent to use the land for agricultural purposes, would qualify the land for agricultural classification. The majority nevertheless concludes that although approximately ten percent of the land had been cleared by January 16, 1980, no "specific amount of land was cleared as of January 1, 1980." At page 588. I find no basis for the imposition of such a standard  no authority requires that a finite portion of the land be cleared as a prerequisite to the grant of an agricultural classification.

The Evidence
This court's review is limited to a determination as to whether substantial competent evidence supports the trial court's finding that the land was used primarily for agricultural purposes. Markham v. Fogg, 458 So.2d 1122 (Fla. 1984); Greenwood v. Oates, 251 So.2d 665 (Fla. 1971); Hausman v. Rudkin, 268 So.2d 407 (Fla. 4th DCA 1972). The record discloses substantial evidence to support the trial court's decision.
John Mitchell leased the property from the taxpayer. He testified that he subleased a portion of the property to Frederick Rutzke and that he began to clear the portion he kept for himself in early November, 1979. Rutzke testified that he began to clear his portion of the land in late October or early November, 1979. The testimony of the lessees, evidence of lease and sublease provisions requiring that the land be farmed, and evidence that the land was subsequently used for continuing agricultural purposes, supported the trial court's determination that the land was used for bona fide agricultural purposes on January 1, 1980.

The Law
The Property Appraiser, as initiator of a de novo proceeding in the circuit court, has the burden of proving that his classification and assessment of the property in question was made in substantial compliance with the law. Bystrom v. Equitable Life Assurance Society, 416 So.2d 1133 (Fla. 3d *590 DCA 1982), review denied, 429 So.2d 5 (Fla. 1983); Muss v. Blake, 416 So.2d 2 (Fla. 3d DCA 1982); § 194.032(6)(c), Fla. Stat. (1981). The trial court determined that the Property Appraiser failed to sustain that burden.
Jacques Victor worked for the Property Appraiser and made the initial determination to disallow the agricultural classification. Victor testified that the primary basis for denying the agricultural classification was the fact that no crops were growing on the land on January 1, 1980. Victor stated that clearing the land would not, of itself, constitute bona fide good faith agricultural use unless the property had already been used for agricultural purposes. In his opinion the factors set forth in section 193.461(3)(b), Florida Statutes (1979), "don't have much application" without evidence of prior agricultural use and growing crops. This interpretation of the statutory requirements was erroneous.
Although the Property Appraiser may determine the weight to afford each element, he must consider all seven factors set forth in section 193.461(3)(b). Roden v. K&K Land Management, 368 So.2d 588 (Fla. 1978). Here, the Property Appraiser failed to consider the existing leases. Thus, under the facts and the law, the trial court correctly ruled that the failure to consider all elements constituted a misapplication of law.
Favorable tax treatment is predicated on land use or physical activity conducted on the land. Hausman. Clearing the land is physical activity evidencing agricultural usage. Cf. Straugn v. Tuck, 354 So.2d 368 (Fla. 1977) (where land in natural unimproved state, ample evidence upon which tax assessor could have found land not used for agricultural purposes); Mackle Co. v. Dade County, 220 So.2d 422 (Fla. 3d DCA 1969) (where taxpayer testified that he had no intent to farm property or plant crops that year, clearing land not sufficient proof of agricultural use); Janes Bros., Inc. v. Perry, 229 So.2d 147 (La. Ct. App. 1969), cert. denied, 255 La. 788, 232 So.2d 515 (1970) (equipment used to clear and prepare land exempt from taxation as equipment used exclusively for agricultural purposes); Mississippi Employment Security Commission v. Ballard Co., 228 So.2d 361 (Miss. 1969) (clearing of land by farmer's employees constituted agricultural employment exempt from taxation for employment security purposes). It is not necessary to demonstrate that crops are actually growing to qualify for an agricultural classification. Proof that the landowner embarked upon a plan by clearing, planting, or cultivating is evidence of bona fide agricultural use. See Conrad v. Sapp, 252 So.2d 225, 227 (Fla. 1971); Withers v. Metro Dade County, 290 So.2d 573 (Fla. 3d DCA 1974).

Burden of Proof
I take issue with the majority's statement that the taxpayer had the burden of proving agricultural use. Case law provides that it is the Property Appraiser's burden to demonstrate his substantial compliance with the law in determining the classification and assessment. Equitable; Muss. The Appraiser's failure to consider all statutory elements enunciated in section 193.461(3)(b) curtailed a shift in the burden of proof. It is only after the burden shifts, which did not occur in this case, that the taxpayer must demonstrate the lack of a reasonable hypothesis to support the Property Appraiser's assessment. Straughn; Equitable.
For these reasons, I would hold that the trial court ruled correctly and that its conclusions are supported by the record and by applicable case law. Accordingly, I would affirm.
Before SCHWARTZ, C.J., and BARKDULL, HENDRY, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
The motion for rehearing en banc is denied.
SCHWARTZ, C.J., and BARKDULL, HENDRY, HUBBART, NESBITT, DANIEL S. PEARSON and JORGENSON, JJ., concur.
*591 BASKIN, Judge (dissenting from denial of rehearing en banc).
Because the majority opinion conflicts with Bystrom v. Equitable Life Assurance Society of the United States, 416 So.2d 1133 (Fla. 3d DCA 1982) and Muss v. Blake, 416 So.2d 2 (Fla. 3d DCA 1982), I would grant rehearing en banc.
The majority opinion erroneously places the burden on the property owner to prove that the property was being used for agricultural purposes. However, as the initiator of a de novo proceeding in the circuit court, the Property Appraiser must first prove that his classification and assessment were made in substantial compliance with the law. Section 194.032(6)(c), Florida Statutes (1981) provides: "The circuit court proceeding shall be de novo, and the burden of proof shall be upon the party initiating the action." In Equitable and in Muss, this court recognized and applied that principle. The majority opinion under consideration conflicts with the decisions of this court.
With regard to the merits, the Property Appraiser failed to comply with the law in classifying the property. The Property Appraiser testified that he believed the statutory factors of section 193.461(3)(b), Florida Statutes (1979), were of little application in the absence of evidence of prior agricultural use and growing crops. A reasonable inference to be drawn from the Appraiser's statement is that in considering statutory factors, he relied solely on the lack of prior agricultural use and failed to consider the other elements. Although section 193.461(3)(b) permits consideration of "the length of time the land has been so utilized," prior use of the land is not dispositive of the issue. It is the use of the property on January 1 of the year in question that establishes the character of the property for tax purposes. Furthermore, in Roden v. K & K Land Management, Inc., 368 So.2d 588 (Fla. 1978), the supreme court stated that "the factors listed in subsection (b) of section 193.461(3) are to be considered in making the determination of good faith agricultural use but none is determinative." (emphasis supplied). The supreme court's construction of the statute in Roden supports the argument that the Property Appraiser's failure to consider all the factors in subsection (b) invalidates the presumption of correctness which generally attaches to property classifications. Furthermore, the Appraiser's emphasis on the absence of growing crops constituted an unwarranted departure from prescribed guidelines.
It is apparent that the Property Appraiser applied an improper standard in classifying the property by relying on the absence of growing crops and prior use and by failing to consider all the elements set forth in section 193.461(3)(b). The use of an improper standard prevents the shifting of the burden to the property owner and destroys the presumption of validity.
By removing the initial burden of proof from the Appraiser, the majority's opinion conflicts with state statutes and with the law set forth in Equitable and Muss. I would therefore grant rehearing en banc and would affirm the trial court's decision holding the property qualified for agricultural classification for tax purposes.
FERGUSON, J., concurs.
NOTES
[1] The only issue in the present case is the appropriateness of the Property Appraiser's classification of the property as non-agricultural. The Property Appraiser's method of valuing the property is not an issue. Thus, if his classification is correct, his assessment is correct.
[2] The classification was made pursuant to Section 193.461(3)(b), Florida Statutes (1979):

"Subject to the restrictions set out in this section, only lands which are used primarily for bona fide agricultural purposes shall be classified agricultural. `Bona fide agricultural purposes' means good faith commercial agricultural use of the land. In determining whether the use of the land for agricultural purposes is bona fide, the following factors may be taken into consideration:
"1. The length of time the land has been so utilized;
"2. Whether the use has been continuous;
"3. The purchase price paid;
"4. Size, as it relates to specific agricultural use;
"5. Whether an indicated effort has been made to care sufficiently and adequately for the land in accordance with accepted commercial agricultural practices, including, without limitation, fertilizing, liming, tilling, mowing, reforesting, and other accepted agricultural practices;
"6. Whether such land is under lease and, if so, the effective length, terms, and conditions of the lease; and
"7. Such other factors as may from time to time become applicable."
[3] Prior to 1972, a bona fide agricultural use was all that was required in order to obtain assessment as agricultural land. However, by amendment in 1972, see Chapter 72.181, Laws of Florida, subsection (3)(b) of Section 193.461 mandated "good faith commercial agricultural use" of the land in question, simply adding the factor of profit or profit motive. See Straughn v. Tuck, 354 So.2d 368; Walden v. Tuten, 347 So.2d 129 (Fla. 2d DCA 1977), cert. denied, 355 So.2d 518 (Fla. 1978).
[4] Section 193.11(3), Florida Statutes (1957), expressly required assessment on an acreage basis. See generally St. Joe Paper Co. v. Brown, 223 So.2d 311 (Fla. 1969); Tyson v. Lanier, 156 So.2d 833 (Fla. 1963) (nothing in statute requiring lands used for agricultural purposes to be assessed on acreage basis is inconsistent with statutory requirement that all property be assessed at full cash value). While the 1979 version of the statute contains no comparable mandate, it is clear that assessments were at that time and are currently made on this basis.
[5] While the aerial photograph clearly reveals that on February 4, 1980, fifty per cent of the 180-acre tract still remained in its raw, uncleared and garbage-infested state, the sublessee of the property owner testified that as of that time he was pushing or clearing the land at a rate of from five to eight acres a day. The Property Appraiser points out that if, on February 4, 1980, only fifty per cent of the subject property had been cleared, at five acres a day only eighteen days would have been consumed, and at eight acres a day only eleven days would have been consumed to clear the approximately fifty per cent of the land which had, at that time, been cleared. It follows, he persuasively says, that none of the property was cleared as of January 1, 1980.
[6] Clearing of land in connection with a forestry enterprise rather than farming is, of course, a much less ambiguous agricultural use than clearing of land for planting. Thus, cases such as Conrad v. Sapp, 252 So.2d 225 (Fla. 1971), are not apposite to the case at hand.
[7] See n. 1, supra.