# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00184-SCT

*MADISON COUNTY, MISSISSIPPI, ACTING BY AND*
*THROUGH THE MADISON COUNTY BOARD OF*
*SUPERVISORS AND MADISON COUNTY TAX*
*ASSESSOR'S OFFICE*

*v.*

*MARTHA K. LENOIR*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/16/96 |
| TRIAL JUDGE: | HON. ROBERT L. GOZA, JR. |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DEWEY HEMBREE |
| | C.R. MONTGOMERY |
| ATTORNEYS FOR APPELLEE: | HARRIS H. BARNES, III |
| | WILLIAM E. DOSSETT |
| | JOHN V. ESKRIGGE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 6/12/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/3/97 |

**BEFORE PRATHER, P.J., McRAE AND SMITH, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. STATEMENT OF THE FACTS AND CASE

¶1. Martha K. Lenoir is the owner of parcels of real property totaling approximately 47 acres and located near downtown Madison in Madison County. The property had been valued by the taxing authorities as agricultural use property for more than thirty years prior to 1991. Lenoir did not receive agricultural use valuation with regard to the property for her 1991 taxes and was appraised with a value of $ 2,525,000.00, although she disputed the appropriateness of this change in valuation. On or about March 30, 1992, Lenoir applied to the Madison County Tax Assessor for a resumption of agricultural land valuation on the property. Lenoir noted that the property was planted with trees

prior to April 1, 1992 and she argued that it was accordingly being used for timber production in accordance with Miss. Code Ann. § 27-35-50 by the date.

¶2. Lenoir's request for agricultural use valuation was denied by the Tax Assessor on April 16, 1992 on the grounds that the property was not "devoted" to the production of timber by the assessment date of January 1, 1992. Lenoir appealed to the Madison County Board of Supervisors, which affirmed the tax assessor's ruling. Lenoir paid the taxes under protest and appealed to the Madison County Circuit Court. The circuit court reversed the decision of the Board of Supervisors and awarded Lenoir agricultural use valuation on the property. The Board of Supervisors timely filed an appeal before this Court.

## II. <u>LAW</u>

### Was Martha K. Lenoir actually using her real property for forestry purposes on January 1, 1992, and entitled to an Agricultural Use Valuation under Mississippi law?

¶3. The Board argues on appeal that the Circuit Judge was in error in reversing the Board's ruling denying Lenoir agricultural use valuation for 1992. The present case is one of statutory interpretation and application, with the primary issue being whether or not this State's *ad valorem* tax statutes require that property sought to be classified as agricultural use property be actually used for agricultural purposes by January 1 of each tax year. Miss. Code Ann. § 27-35-50(4), "Determination of true value for purposes of assessment" provides in pertinent part that:

> In arriving at the true value of any land used for agricultural purposes, the appraisal shall be made according to its current use, regardless of its location. . . . The land shall be deemed to be used for agricultural purposes when it is devoted to the commercial production of crops and other commercial products of the soil, including but not limited to the production of fruits and timber or the raising of livestock and poultry . . .

Miss. Code Ann. § 27-35-50 thus provides that the status of property as agricultural or non-agricultural is to be determined by reference to its "current use," but the statute does not set forth a specific date of each year on which the "current use" of the property is to be determined. Also subject to differing interpretations is the requirement in § 27-35-50 that property be "devoted to the commercial production of crops . . ." in order to qualify for agricultural use valuation. It is the contention of the Board that "without at least some actual preparation of the property, it could not be determined as being devoted to the commercial production of timber as of the critical date."

¶4. Lenoir submits the following stipulated facts in support of her contention that the property was in fact "devoted" for agricultural use for 1992 valuation purposes:

> 4. The Plaintiff, after discussions with her advisors, decided to place the subject property in timber production prior to January 1, 1992.

> 5. The Plaintiff made plans to plant oak and pine trees on her property, contacted several individuals regarding the planting of trees, and took other actions to prepare the subject property for the commercial production of timber prior to January 1, 1992.

6. The Plaintiff was unable to have the subject property planted in timber prior to January 1, 1992, through no fault of her own, as she was unable to secure seedlings prior to the date, despite efforts to do so. . . .

16. The subject property had been continuously granted agricultural use valuation since Plaintiff or her family has owned it until 1991, being approximately 30 or 40 years, and has been granted agricultural use valuation since 1992. Only in 1991 and 1992 was the subject property not granted agricultural use valuation.

In addition, the record indicates, and the parties have stipulated, that the property was actually planted in timber by April 1, 1992. This Court concludes that the aforementioned stipulated facts should have been sufficient to qualify Lenoir's property as agricultural use property for ad valorem tax purposes in 1992. The nature of timber farming, as well as most other types of farming, is such that a farmer will often not have actually planted the seedlings or taken other physical steps towards preparing the soil for planting as of January 1 of each year. This fact should not preclude a finding that the property is "devoted" for agricultural purposes, however, given that the Legislature has set forth no requirement that actual planting have occurred by January 1 of each year.

¶5. This Court is in agreement with the Circuit Judge's ruling, which provides in part that:

There are some observations on the statutory scheme for the assessment of taxes which are appropriate to consider when analyzing the issues presented by this appeal. First, Section 27-35-49 requires the landowners to furnish the assessor with the number of acres devoted to agricultural use by April 1, but does not say "devoted to agricultural use as of January 1." Second, Section 27-35-50 recognizes that different types of property require different appraisal approaches and authorizes the assessor to select the appropriate method based on "the nature of the property . . . and the current use," but again the statute fails to mention January 1 as the operative date.

These points, when coupled with the fact that most agricultural land is both vacant and inactive on January 1 of every year, lead me to the conclusion that even if we accept January 1 as the critical date for the determination of "current use" any definition of agricultural use on that date must, as a matter of practical necessity, encompass vacant land which is intended for agricultural purposes during the ensuing crop year, is suitable for the intended purpose, is not being used otherwise, and is actually in use in accordance with sound agricultural practices by April 1. The stipulated facts conclusively establish the Plaintiff [sic.] meets these criteria and in my opinion the Defendant was in error in denying her application for assessment on the basis applicable to land devoted to agricultural use.

This conclusion is strengthened by the undisputed fact that on January 1, 1992, the land was vacant and not in use for any other purpose just as it had been during all of the years prior to 1991 when it was classified as agricultural for ad valorem taxation. Nothing had changed except the Assessor's opinion as to current use. The Plaintiff's application was not so much a request for a new classification as it was for reinstatement of the old. Although she did demonstrate her entitlement to the requested classification under the standards which I believe are applicable under the statutes, it would have been more appropriate under the circumstances of this case to have required the Defendants to show that she was not entitled to have the previously

recognized and applied classification restored. For these reasons, the decision of the Board of Supervisors is reversed with instructions.

This Court considers the Circuit Judge's ruling to be eminently reasonable and consistent with the language of the applicable statutes as well as with the realities of agricultural practices and common sense. The Legislature is perfectly capable of setting forth an explicit requirement that physical preparations towards planting have been completed on a given parcel of property by January 1 of each year in order to qualify the property as agricultural use property for *ad valorem* tax purposes, but it set forth no such requirement. To the contrary, the Legislature used the term "devoted," which term would appear to include within its scope property which is set aside for agricultural purposes in a given year, even if the property is not actually fertilized and ready for planting as of January 1.

¶6. The Board cites MCA § 27-35-3, which provides that:

> All taxable real property situated in the state acquired or held by any person before January 1 of each year, and all other taxable property so situated or brought into this state at any time prior to March 1 of each year, shall be assessed and taxes thereon paid for the ensuing year, with the exception of heavy duty equipment as defined in § 27-35-1(2).

This Court agrees that § 27-35-3 establishes liability for taxation on the part of a taxpayer on January 1, but the statute is not concerned with the classification or valuation of the property as agricultural or non-agricultural. Lenoir was clearly subject to some amount of liability for *ad valorem* taxes based on her undisputed ownership of the property on January 1, but there is nothing in § 27-35-3 which requires that the property be actually plowed or planted in crops on January 1 in order to be valued as agricultural use property.

¶7. Miss Code Ann. § 27-35-49 provides that:

> It shall be the duty of the tax assessor to assess all the lands in his county and he shall require the owner, agent, or person having possession, or charge of any lands, to render a list of all lands owned, or in charge, or in possession, of such owner, agent or person, and land shall be appraised according to its true value and assessed in proportion thereto, taking into consideration the improvements thereon.

> Every person owning or being in possession, or in charge, of any land shall deliver to the tax assessor on demand, and in any event not later than April 1 in each year, a list of all lands owned by, or in possession, or in charge, made out on the tax lists prescribed, and showing the total number of acres (except the land platted by blocks and lots), the total number of cultivatable lands and the value thereof, and the number of acres of uncultivatable land and the value thereof ad the number of acres devoted to agricultural purposes.

¶8. MCA § 27-35-49 thus provides that taxpayers have until April 1 to provide the assessor with various information relevant to the valuation of agricultural property, including "the number of acres devoted to agricultural purposes." The language of § 27-35-49 provides an indication that the Legislature intended that the process of determining whether a given piece of property is "devoted" for agricultural use should not occur solely on January 1, but may continue until April 1. This flexible approach appears to be a sound one, given that, as noted by the Circuit Judge, January 1 is not the

most suitable date for assessing the extent to which property is used for agricultural purposes.

¶9. The Board cites the Florida case *Bystrom v. Union Land Investments, Inc.*, 477 So.2d 585 (Fla. 1985), in which a Florida court held that the assessment date controlled the point when the tax assessor must determine actual use of the property for agricultural valuation purposes. The Court accordingly held that a farmer was unable to claim agricultural use valuation when the first planting of his crop did not occur until January 24 of the taxable year. *Bystrom*, 477 So.2d at 587-88. As noted by Lenoir, however, *Bystrom* interpreted a Florida statute which was materially different from this States' statutory scheme in that the statute provides for a valuation of the property according to "just value" on January 1 of each year. See: § 192.042. Fla. Stat. (1979). If such was the intent of the Legislature of this State, it did not set forth the intent in the statutes, and the provisions of § 27-35-49 in particular indicate that the Legislature's intent was otherwise, at least with regard to agricultural property.

¶10. This Court does not hold that § 27-35-49 grants a taxpayer an absolute right to wait until April 1 of each year to establish that property is devoted to agricultural purposes. However, a reading of the statute does cast serious doubt on the Board's assertion that January 1 is the "critical date" on which actual physical preparations towards planting have been made by the taxpayer on the property. As noted by Lenoir, this Court has held that it is "the well settled rule that '(t)ax laws are to be strictly construed against the taxing powers and all doubt resolved in favor of the taxpayer.'" *Marx v. Broom*, 632 So.2d 1315, 1318 (Miss. 1994), citing *Lambert v. Mississippi Limestone Corp.*, 405 So.2d 131 (Miss. 1981). This Court is of the view that the statutes favor Lenoirs' position in the present case, but *Marx* indicates that any doubts which do exist are to be resolved in favor of Lenoir.

¶11. Given the Legislature's requirement that property be "devoted" to agricultural use, taxing authorities should look to factors other than the current state of the soil as of January 1. Specifically, taxing authorities should look to common-sensical considerations which would indicate whether the property is in fact "devoted" to agricultural use, including, but not limited to, the nature of the property and of the owner. A commercial developer which owns a vacant urban lot which is listed for sale and which has never been used for agricultural purposes lot should properly face a closer scrutiny in his attempts to have the property classified as agricultural use property than a person such as Lenoir, whose family had owned the property and used it for agricultural purposes for over 30 years.

¶12. In many cases, the taxing authority will be able to conclusively establish on January 1 that a given parcel of property is not properly considered to be devoted for agricultural use. This Court concurs with the Circuit Judge's conclusion that property should not be used for another purpose as of the January 1 date, given that the term "devoted," while not implying actual planting, does imply that the property is being set aside for agricultural use. At any rate, the evidence is undisputed that Lenoir was not using her property for non-agricultural purposes during the tax year in question, and the mere fact that she had not actually planted the seedlings as of January 1 should not preclude her from receiving agricultural use valuation for the property in question. The ruling of the Circuit Judge is affirmed.

¶13. **JUDGMENT IS AFFIRMED.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, McRAE, ROBERTS, SMITH AND MILLS, JJ.,**

**CONCUR. BANKS, J., NOT PARTICIPATING.**